## J. E. MERGOTT CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9873.

United States Court of Appeals
Third Circuit.

Argued April 22, 1949.

Decided Sept. 1, 1949

McLaughlin, Circuit Judge, dissented.

---

6. Restatement, Law of Torts, Paragraph 519; 35 C.J.S., Explosives, § 8.

7. Restatement, Law of Torts, Paragraph 523.

Emanuel P. Scheck, Newark, N. J. (Harry V. Osborne, Jr., Newark, New Jersey, on the brief), for petitioner.

Sumner N. Redstone, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, A. F. Prescott, Special Assistants to the Attorney General, on the brief), for respondent.

Before BIGGS, Chief Judge, and McLAUGHLIN and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

Petitioner ("Mergott"), a Delaware corporation on the accrual tax basis, seeks review of a decision of the Tax Court holding that there are deficiencies in its declared value excess-profits tax for the year 1943 and in its excess profits tax for the year 1944.

Whether or not there was a tax deficiency in those years is dependent upon the propriety of a 1943 deduction of $17,068.68, that sum purportedly representing a loss resulting from the scrapping of 103 tumbling barrels and 58 tanks by Mergott in that year. The facts are substantially as follows: For at least several years prior to 1930 and up to 1943, Mergott had been manufacturing metal handbag frames and other metal specialties, in the process of which fabrication Mergott used patented wooden barrels for a polishing operation.[1] The oak used for the barrels was specially selected, milled to Mergott specifications, and stored in a particular manner on Mergott property. The barrels all were constructed under Mergott supervision by two Mergott carpenters continuously on the Mergott payroll. The production rate on the barrels was between 52 and 78 per year. The useful life of the barrels was six months to two years, the average being one year. As the Tax Court said, "Each year petitioner abandoned, as worn out, approximately the same number of barrels and tanks as it built during the year."[2]

In 1943, war material work by Mergott forced discontinuance of its civilian products and, since the tanks and barrels then on hand were no longer useful, they were scrapped.[3]

Such was the function, and the history, of the tumbling barrels. The accounting treatment which Mergott accorded them requires some detailed explanation. Prior to 1931, the value of the barrels was included in the merchandise inventory account. At the suggestion of a Mergott accountant, in 1931 the $18,980 item representing the value of the barrels was subtracted from opening inventory and added to the machinery and equipment account, "purely for balance sheet purposes."[4] This amount was adjusted to reflect the actual value of barrels on hand as of the close of the years, 1932, 1933, 1934, 1935, and 1936;[5]

1. In the polishing operation, the barrels of which we speak were placed in tanks made of live cypress. The question of the deductibility of the value Mergott assigned to the tanks is in all material respects identical with that concerning the barrels. Consequently, for convenience, we shall refer henceforth only to the barrels.

2. We note in passing that the vice president of Mergott also testified that Mergott had never had a stockpile of barrels. The record does not explain, however, why 103 were scrapped when the annual production was between half and three-quarters of that figure, and when the average life was one year.

3. Half were destroyed in the earlier part, and half in the autumn, of 1943. Barrels had been made almost until the scrapping was begun.
Although the metal was sold for scrap, the officer of Mergott testified that "It hardly paid to recover [the metal]."

4. The quoted characterization is from the testimony of the Mergott accountant.

5. The amounts were as follows: 1932, $18,960; 1933, $16,560; 1934, $16,560;

subsequent to December 31, 1936, the practice was discontinued and the value as of that date, viz., $17,068.68, was carried unaltered through the years 1937 to 1943. Mergott, nevertheless, continued to charge directly to operating expenses the labor and material costs incurred in the production of replacement barrels. When the barrels were scrapped in 1943, Mergott charged to profit and loss the item of $17,068.68 carried since 1936. The Tax Court held that, since Mergott had taken a deduction for the full amount expended by Mergott in labor and materials in the manufacture of the barrels on hand in 1943, an allowance of the deduction of $17,068.68 would be granting Mergott a double deduction; and therefore upheld the deficiency determination of the Commissioner. 1948, 11 T.C. 47.

■ The case before us is not one in which the law is disputed. All members of this Court agree that "bookkeeping entries, though in some circumstances of evidential value, are not determinative of tax liability", Helvering v. Midland Ins. Co., 1937, 300 U.S. 216, 223, 57 S.Ct. 423, 426, 81 L.Ed. 612, 108 A.L.R. 436. The sole question before the Tax Court, as well as before us, is factual: When did Mergott suffer the loss for which it now seeks to claim credit? The difficulty stems from the vacillating accounting practice adopted by Mergott,[6] which has created problems entirely of its own making. Even if we were to assume arguendo that, by virtue of section 36, P.L. 773, 80th Congress, 26 U.S.C.A. § 1141(a),

this Court may substitute its concept of proper accounting practice for that prescribed by the expert tribunal, the Tax Court, we are not prepared to say that the instant Tax Court decision is without substantial foundation in the evidence.

The item of $17,068.68 represented the value of the barrels on hand on December 31, 1936. Those barrels, presumably, had long since been consumed and discarded by 1943. Consequently, it could not be the 1936 barrels, but barrels constructed thereafter, for which Mergott attempted to deduct in 1943. As to any barrels built subsequent to December 31, 1936, the Tax Court has found that "Labor and material costs for their construction were treated in the same manner as were the costs incident to the creation of the products it sold," that "the cost of producing the barrels was in all instances deducted as a current expense," and that "For each [barrel abandoned in 1943] petitioner was given a simultaneous deduction for the full amount expended in labor and materials." While the Mergott accountant did present testimony indicating that the *effect* of what was done amounted to setting off the material and labor cost in producing the barrels against the cost of the discarded barrels, we know of no reason why the Tax Court had to be bound by his testimony. The fact that the figure representing the value of the barrels on hand remained absolutely constant for more than 6 years, between 1936 and 1943, a period when the national economy was undergoing radical

1935, $15,280; 1936, $17,068.68. The figures prior to 1935 apparently include barrels other than the tumbling barrels here involved.

6. If the intent of the Mergott accountants was to include the barrels in inventory throughout, they were ignoring section 29.22(c)-1 of Treasury Regulations 111, 491 C.C.H. Standard Tax Rep. Par. 116, which provides in part, " * * * The inventory should include all finished or partly finished goods and, in the case of raw materials and supplies, only those which have been acquired for sale or which will physically become a part of merchandise intended for sale. * * *"

The rule prior to 1933 had "allowed the

taxpayer to inventory 'supplies on hand that have been acquired for' * * * use in productive processes * * *." II Montgomery, Federal Taxes Corporations and Partnerships, 1948–1949, ch. 14, page 421. It goes without saying, of course, that even under that rule it was incumbent upon Mergott to inventory its barrels annually, with which requirement Mergott complied until 1936.

The distinction between these barrels and goods accompanying merchandise for sale is that which renders inapplicable here the ruling as to bread wrappers in Liberty Baking Co. v. Heiner, 3 Cir., 1930, 37 F.2d 703, on which case Mergott has placed some reliance.

changes,[7] plus the obvious fact that at least in 1943, under its own theory, Mergott would have been deducting the 1943 operating expenses of making the barrels as well as writing off the same barrels, certainly permitted the Tax Court to draw the conclusion that, whatever may have been intended by the Mergott officials, what they actually accomplished was to charge to current expenses the cost of the barrels on hand.[8]

It requires no citation to state that the cost of the barrels actually on hand in the year 1943, having been charged to the cost of operations with the commensurate tax advantages, cannot again be charged off simply because they are on hand. See David Hanover v. Com'r, 1949, 12 T.C. 342, referring to the instant Tax Court decision.

Somewhere in prior years, petitioner probably should have charged off to expense the item of $17,068.68. This was not done; why, we can only speculate. It may well be that such an action would not have been profitable taxwise. Whatever the reason of taxpayer may have been, the principle has long been established that, for tax purposes, expenses attributable to one year may not be charged off in a subsequent year. Sec. 29.43-2 Treasury Regulations 111, 492 C. C. H. Standard Fed. Tax Rep. Par. 409.

The decision of the Tax Court will be affirmed.

McLAUGHLIN, Circuit Judge (dissenting).

The sole question before us is whether in 1943, petitioner rightfully deducted the sum of $17,068.68 as representing a loss arising from the scrapping of its tanks and tumbling barrels in that year. The Tax Court found there was no allowable loss, holding that petitioner had properly deducted cost of labor and materials when expended for manufacture of the equipment.

For a number of years prior to 1943, petitioner had manufactured metal handbag frames and other metal specialties. In polishing those products it used wooden tumbling barrels and tanks. The metal products to be polished together with a chemical solution, water and steel shot, were placed in the barrels. Those barrels revolved in tanks containing a solution consisting principally of soap and water. The tanks and barrels used in the process were built by petitioner. Concededly, their average life was about a year. Because of the type of use to which the barrels and tanks were subjected, they would be replaced when they fell into disrepair. As the Tax Court said, "Each year petitioner abandoned as worn out, approximately the same number of barrels and tanks as it built during the year."

Petitioner considered the barrels and tanks to be a factory supply item and up to the close of 1930 included their cost in merchandise inventory. That cost figure was eliminated from merchandise inventory in 1934 and at the same time from the 1934 opening inventory and it was added to the item of machinery and equipment. In 1936, experience having shown that the number of barrels on hand at the close of every year would vary very slightly because of the practice of replacing the discarded barrels, it was decided that thereafter the number of tanks or barrels on hand at the end of any year would not be physically counted. However, the barrels and tanks were continued on substantially the same inventory basis up to 1943, and no depreciation was ever taken on them.

In 1943, war material work by petitioner forced discontinuance of its civilian products and, since the tanks and barrels were no longer useful, they were scrapped. To take care of this, petitioner's accountants credited the tank and barrel account with the cost value of the barrels on hand at the beginning of 1943, namely, $17,068.68, and charged profit and loss. Barrels and

---

7. The vice president of Mergott testified: "I know that the cost of our factory increased double during that period."

8. What Mergott professed to have effectually done in its bookkeeping entries, of course, was contrary to section 29.22 (c)-1, Treasury Regulations 111, quoted in the pertinent part in footnote 6, supra, because the barrels were not supplies acquired for sale or physically a part of merchandise intended for sale.

tanks had been constructed almost up to the time scrapping was undertaken. The Tax Court, as already indicated, disallowed the claimed loss of $17,058.68.

Petitioner urges that its cost of producing the scrapped barrels and tanks had not been previously deducted and I think that is the fact. Actually what happened was that down to 1943, petitioner's cost in producing its tanks and barrels was charged to expense upon consumption and use in operation of the tanks and barrels. In 1943 the tanks and barrels of that year were scrapped during the year and prior to their consumption through use. Ordinarily at the end of 1943, deduction would have been claimed for those tanks and barrels which would have been by that time consumed. But that situation never arose because by December 1943, petitioner was out of civilian production and had abandoned its tanks and barrels. The evidence is clear that with the exception of 1943 the deduction for each year's tanks and barrels was taken at the end of the particular year after the tanks and barrels had been consumed by use throughout the year. And it is this circumstance which furnishes the key to this confusing tax problem. The accounting picture is further complicated by the fact that under petitioner's approximation, the cost and number of the discards were the same as the cost and number of the replacements. However, as found by the Tax Court, and there is no evidence to the contrary, that was the way petitioner did keep its tank and barrel account. In connection with this, it must be remembered that the constant approximate figures did not represent the number and cost of the original barrels and tanks but rather the quantity and cost of the current barrels and tanks. It should be added that there has not been the slightest reflection cast upon petitioner's probity because of its approximation method which while it has made for considerable misunderstanding in a tax sense does seem to have been of practical assistance to the taxpayer. And in any event as Mr. Justice Brandeis said in Helvering v. Midland Ins. Co., 300 U.S. 216, 223, 57 S.Ct. 423, 426, 81 L.Ed. 612, 108 A.

L.R. 436, " * * * bookkeeping entries, though in some circumstances of evidential value, are not determinative of tax liability."

Basically there is no dispute on the facts. And from those facts, whatever might be said of petitioner's bookkeeping, it convincingly appears that petitioner had not taken any prior deduction for the barrels which it scrapped in 1943. Petitioner's system of not deducting the cost of the barrels and tanks until they had been worn out followed Treasury Regulations 111, Section 29.23 (a)-3 which reads: "Cost of Materials.—Taxpayers carrying materials and supplies on hand should include in expenses the charges for materials and supplies only to the amount that they are actually consumed and used in operation during the year for which the return is made, provided that the cost of such materials and supplies has not been deducted in determining the net income for any previous year. If a taxpayer carries incidental materials or supplies on hand for which no record of consumption is kept or of which physical inventories at the beginning and end of the year are not taken, it will be permissible for the taxpayer to include in his expenses and deduct from gross income the total cost of such supplies and materials as were purchased during the year for which the return is made, provided the net income is clearly reflected by this method."

The Tax Court in its opinion agrees generally with petitioner's method saying that it was "consistent with, indeed required by, the principle that articles with an anticipated life of one year or less are to be dealt with by means of deductions for current expenses. W. B. Harbeson Lumber Co. [v. Com'r], 24 B. T. A. 542, 550". But the Tax Court failed to appreciate that the 1943 deduction was sui generis. The deduction which would have been taken in due course at the end of that year and which would have been based on the barrels and tanks consumed during the year was never claimed because prior to that time arriving, the existent 1943 barrels and tanks, the only barrels and tanks petitioner then possessed, had been scrapped. It was

solely on the loss resulting from the scrapping of the barrels and tanks that petitioner claimed the deduction in question.

I have no quarrel, of course, with the tax principle that expenses attributable to one year may not be charged off in a subsequent year. Section 29.43-2 Treasury Regulations 111. But that principle has no application under the present facts. Petitioner was here functioning, and quite properly in my judgment, under the above quoted Section 29.23 (a)-3 of the Regulations.

I think the decision of the Tax Court should be reversed.