Casy O'BRIEN and Dorotha O'Brien, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17938.

United States Court of Appeals Ninth Circuit.

Aug. 7, 1963.

Rehearing Denied Sept. 23, 1963.

Casy O'Brien, San Jose, Cal., in pro. per. for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Alan D. Pekelner, and Michael A. Mulroney, Attys., Tax Division, Dept. of Justice, Washington, D. C., for respondents.

Before BARNES, HAMLIN and BROWNING, Circuit Judges.

HAMLIN, Circuit Judge.

Casy and Dorotha O'Brien filed a petition in the Tax Court to review a determination of deficiency by the Commissioner of Internal Revenue, respondent herein, covering joint returns for the calendar years 1955, 1956 and 1957. The Tax Court found in favor of respondent, and a timely appeal was taken to this court.

The facts show that the petitioners, Casy and Dorotha O'Brien, are husband and wife.[1] During the period from 1948 through 1952, petitioner operated a business known as Casy's Feed & Seed Store in Redding, California. In July, 1949, a fire destroyed the inventory and stock in trade of petitioner's business. Petitioner made claims against four fire insurance companies for an inventory fire loss in the total amount of $33,451.67. In support of the difference between the actual loss sustained by him, i.e., $27,853.23, and the claimed loss, petitioner prepared and presented to the insurance companies false and fraudulent tags or certificates showing purchases by petitioner of barley, wheat and oats in the sum of $5,-598.44. The total amount claimed by petitioner, $33,451.67, was received by him; $30,106.51 was paid in 1949 and the remainder was paid in 1950. Since petitioner's loss was fully compensated for by insurance, he had no deductible casualty loss in those two years and did not claim any. In 1951 petitioner was charged in a criminal proceeding with a violation of section 556 of the Insurance Code of the State of California relating to false and fraudulent claims of loss.[2] He pleaded guilty to eleven violations of said section and was sentenced to prison.

In July, 1951, the four insurance companies involved instituted a civil action against petitioner for the recovery of the $33,451.67 theretofore paid by them to petitioner. This action was based upon a provision in each of the policies reading:

"This entire policy shall be void (a) if the insured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof; or (b) in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof whether before or after a loss."

Judgment was rendered in said proceeding on January 28, 1952, in favor of the insurance companies and against petitioners in the total amount prayed for with interest at 7% from the date of the payments made under the policies. On January 30, 1953, petitioner entered into a compromise agreement with the insurance companies. The agreement called for an immediate payment by petitioner of $4500, quarterly payments thereafter of $250 each, beginning on February 1, 1953, and continuing until the sum of $3000 should have been so paid. The agreement also provided that in the alternative the plaintiffs would accept instead of said sum of $7500 a total of $6750 provided the same was paid on or before February 1, 1954. A satisfaction of judgment was to be delivered to petitioner upon his making payments as provided in the agreement in full. The agreement further provided that if the petitioner

---

1. The term "petitioner", as used hereafter, will have reference only to Casy O'Brien.

2. "§ 556. It is unlawful to:
   "(a) Present or cause to be presented any false or fraudulent claim for the payment of a loss under a contract of insurance.
   "(b) Prepare, make, or subscribe any writing, with intent to present or use the same, or to allow it to be presented or used in support of any such claim."

did not make the payments as agreed the agreement might be terminated by the insurance companies, that all payments theretofore received would be credited toward the judgment, and that the companies could then proceed to collect the balance thereof.

The initial payment of $4500 was made by petitioner as agreed. However, no quarterly payments were made. In 1956 he paid $500 on the judgment to the insurance companies in consideration of a release of a judgment lien from certain property which petitioner desired to sell to third parties. In 1957 the insurance companies by a civil action renewed their judgment. In 1958 the companies entered a satisfaction of the judgment upon payment to them by petitioner of the sum of $3000, thus making the total paid by petitioner $8000.

On the income tax return for 1952, the petitioner deducted as "other business expenses" the sum of $38,141.51,[3] attributing this deduction to the judgment mentioned above. In each succeeding year from 1952 through 1957, petitioner claimed net operating loss carryover deductions resulting in most part from the above mentioned deduction claimed on the 1952 return.

In 1958 the respondent gave notice to petitioner that there was a deficiency in income tax payments for the years 1955, 1956 and 1957. In this notice, respondent disallowed the deduction taken by petitioner in the year 1952 in the sum of $38,141.51, but did allow to petitioner a loss in the sum of $8,000, explaining as follows:

"The loss claimed in the taxable year 1952 in the amount of $38,141.51 from a judgment assessed by insurance companies on January 28, 1952, has been determined to be $8,000.00. It is held that the fair market value of the judgment be a total of the cash payments of $4,500.00, periodic payments aggregating $3,000.00 and an additional $500.00 paid in cash. Income has therefore been increased by $30,141.51."

In the succeeding years 1953 and 1954 this sum of $8,000 was absorbed by income of petitioner and accordingly the net operating loss carryover deductions claimed for 1955, 1956 and 1957 were disallowed.

Although the respondent had allowed petitioner a loss in the sum of $8,000 for the year 1952, respondent in the Tax Court contended and the Tax Court held that petitioner was not entitled to deduct in 1952 any part of the judgment of $33,451.67, because to permit this deduction "would frustrate the sharply defined public policy of California against making false claims of loss, by removing some of the 'sting' from the consequences of petitioner's wrongdoing." [4]

Much can be said in favor of the holding that to allow any deduction by reason of the judgment obtained against him in 1952 by the insurance companies (and on which he paid nothing in 1952) would be to reward petitioner for his illegal acts. However, it is unnecessary for us to base the affirmance of the judgment below upon that ground.

The most that petitioner paid to satisfy the judgment over a period of six years was $8,000. Under any theory, he could not get a greater deduction than the amount he had so paid. This amount had been allowed to him by the Commissioner as a loss in 1952, and this loss was permitted under the respondent's computation to be carried over to 1953 and 1954, and was balanced against in-

3. The amount of $38,141.51 was apparently composed of $33,451.67 which the insurance companies had paid to petitioner plus interest and costs claimed by him.

4. In support of its conclusion, the Tax Court cited Richey, Jr., 33 T.C. 272 (1959) and Nicholas D. Wusich, 35 T.C. 279 (1960). Cf., Tank Truck Rentals v. Commissioner, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed.2d 562 (1958); Hoover Motor Express Co. v. United States, 356 U.S. 38, 78 S.Ct. 511, 2 L.Ed.2d 568 (1958).

come for those years. When the years in question arrived—1955, 1956 and 1957—all of the carryover had been absorbed and thus no amount remained for a carryover into the years 1955, 1956 and 1957.

Under these circumstances the judgment must be affirmed, and it is· so ordered.