B. C. COOK & SONS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 692–71.    Filed December 29, 1972.

*Michel G. Emmanuel* and *Michael D. Annis*, for the petitioners.
*Donald W. Williamson, Jr.*, for the respondent.

OPINION

Dawson, *Judge:* Respondent determined the following Federal income tax deficiencies against the petitioner:

| Taxable year ended | Deficiency |
|---|---|
| Sept. 30, 1962 | $5, 270. 00 |
| Sept. 30, 1963 | 56, 115. 00 |
| Sept. 30, 1964 | 124, 250. 00 |
| Sept. 30, 1965 | 5, 309. 50 |

Two adjustments made in respondent's notice of deficiency have been conceded by petitioner. The only issue presented for our decision is whether the petitioner is entitled to deduct under section 165, I.R.C. 1954,[1] its total embezzlement loss of $605,116.52 in its taxable year ended September 30, 1965, the year it discovered the loss, or whether the loss should be limited to $216;216.52 by disallowing the amounts ($388,900) attributable to the taxable years ended September 30, 1958 through 1961, with respect to which respondent is barred by the statute of limitations from adjusting the tax and for which the petitioner has derived a tax benefit or advantage.

All of the facts have been stipulated, are so found, and are incorporated herein by this reference.

B. C. Cook & Sons, Inc. (herein called petitioner), is a Florida corporation having its principal office in Haines City, Fla., when it filed its petition in this proceeding. Its U.S. corporation income tax returns for the taxable years in question were filed with the district director of internal revenue at Jacksonville, Fla.

At all times pertinent to this proceeding the petitioner was engaged in the business of acquiring citrus fruit for distribution to processing plants.

During its taxable year ended September 30, 1965, the petitioner discovered that an employee, through a series of fictitious purchases,

---

[1] All statutory references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

had embezzled from it substantial sums of money over an 8-year period extending from 1958 through 1965. The amounts embezzled in each of the petitioner's taxable years ended (FYE) September 30, 1958, through September 30, 1965, are as follows:

| FYE Sept. 30— | Amount embezzled |
|---|---|
| 1958 | $49, 750. 00 |
| 1959 | 107, 150. 00 |
| 1960 | 111, 750. 00 |
| 1961 | 132, 750. 00 |
| 1962 | 103, 250. 00 |
| 1963 | 100, 087. 50 |
| 1964 | 165, 625. 00 |
| 1965 | 101, 850. 00 |
| Total | 872, 212. 50 |

The employee had been employed by petitioner as a bookkeeper at the time it was organized in November 1956. Among other things, he was authorized to write checks, place them before a corporate officer for signature, and enter the expenditure in the corporate books of accounts.

Commencing with a check dated January 20, 1958, and continuing through January 11, 1965, the employee caused checks to be drawn on the petitioner's bank account and issued to "J. C. Jackson," a fictitious name used by the employee. The checks were in turn deposited by the employee in a local bank to an account styled "J. C. Jackson," which was in reality owned by the employee who ultimately received the proceeds of the checks.

The checks so drawn were purportedly in payment of fruit purchases. Accordingly, the petitioner's books reflected these amounts as additional fruit purchases although no fruit was actually received, with the result that the petitioner's cost of goods sold was increased by a corresponding amount. The petitioner's gross income for each taxable year involved was in this manner similarly reduced and hence its taxable income decreased by an amount which corresponded with the amounts embezzled in each of those taxable years.

Of the total amount of $872,212.50 embezzled, the petitioner recovered from the employee the amount of $254,595.98 during its taxable year ended September 30, 1965.

On its Federal corporation income tax return filed for the taxable year ended September 30, 1965, the petitioner claimed as a deduction

for embezzlement loss the amount of $605,116.52, computed as follows:

| FYE Sept. 30— | Amount of loss |
|---|---|
| 1958 | $37, 250. 00 |
| 1959 | 107, 150. 00 |
| 1960 | 111, 750. 00 |
| 1961 | 132, 750. 00 |
| 1962 | 103, 250. 00 |
| 1963 | 100, 087. 50 |
| 1964 | 165, 625. 00 |
| 1965 | 101, 850. 00 |
| Total | 859, 712. 50 |
| Less recovery | 254, 595. 98 |
| Loss claimed | 605, 116. 52 |

The amount of loss so claimed corresponds with the amount of the checks except for the taxable year ended September 30, 1958. For that year the checks totaled $49,750 rather than the amount of $37,250, as set out on the petitioner's return filed for its taxable year ended September 30, 1965. This is a difference of $12,500 and is represented by check number 1515 in that amount issued on March 3, 1958, to "J. C. Jackson."

The return filed by the petitioner for its taxable year ended September 30, 1965, reflected a net operating loss in the amount of $383,923.65. Of this amount, $17,567 was deducted as a net operating loss carryback in the petitioner's taxable year ended September 30, 1962; $118,490 was deducted as a net operating loss carryback in the petitioner's taxable year ended September 30, 1963; and $247,867 was deducted as a net operating loss carryback in the petitioner's taxable year ended September 30, 1964.

In his statutory notice of deficiency respondent determined that the deduction of $605,116.52 claimed as an embezzlement loss on the petitioner's return filed for its taxable year ended September 30, 1965, was not allowable to the extent of $388,900. The amount disallowed by respondent was attributable to embezzlement in the following taxable years [2] and in the following amounts:

| FYE Sept. 30— | |
|---|---|
| 1958 | $37, 250 |
| 1959 | 107, 150 |
| 1960 | 111, 750 |
| 1961 | 132, 750 |
| Total | 388, 900 |

---

[2] The taxable years ended Sept. 30, 1958 through 1961, are barred by the statute of limitations and respondent is barred from assessing and collecting additional income taxes for those years under sec. 6501 except as provided by secs. 1311–1315 of the Code.

Petitioner contends that it should be allowed to deduct the full amount ($605,116.52) of the unrecovered embezzled funds. Since the embezzlement was discovered during the taxable year ended September 30, 1965, petitioner argues that it properly claimed a deduction under section 165(a) and (e) [3] of the Code for that taxable year. Section 1.165–8(d), Income Tax Regs., provides that the term "theft" includes embezzlement. In other words, the petitioner simply says that its claimed embezzlement loss deduction falls squarely within the plain language of the statute.

The *only position* taken by the respondent is this: The law prohibits a taxpayer from taking more than a single deduction for the same item; and where, as here, a taxpayer has previously derived a tax benefit or advantage through an *erroneous deduction* or otherwise, he may not deduct the same amount in a subsequent year after the Commissioner is barred by the statute of limitations from adjusting the tax for the prior year. Respondent relies heavily on *Charles Ilfeld Co.* v. *Hernandez*, 292 U.S. 62, 68 (1934); *United States* v. *Skelly Oil Co.*, 394 U.S. 678, 685 (1969); and *R. G. Robinson*, 12 T.C. 246 (1949), affd. 181 F. 2d 17, 18–19 (C.A. 5, 1950).

For the first time in its reply brief the petitioner asserted that the "proper procedure to be followed, if respondent believes that petitioner has received a double benefit, is set forth in sections 1311–1315 of the Internal Revenue Code of 1954." Petitioner then points out the prerequisites to effectuate the mitigation-of-limitations provisions of sections 1311–1315 as to otherwise closed years, i.e., that there must, in effect, be a "determination" by this Court that the claimed losses are allowable in petitioner's taxable year ended September 30, 1965; that petitioner must have taken a position herein which is inconsistent with a position taken with respect to the same item in another taxable year; and that respondent must follow all of the statutory procedures for assessment, including the requirement that a notice of deficiency be mailed to petitioner prior to assessment, if respondent wishes to resort to the mitigation provisions. Petitioner cites, among other cases, *Kenosha Auto Transport Corporation*, 28 T.C. 421, 425–426 (1957).[4]

---

[3] SEC. 165. LOSSES

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\*     \*     \*     \*     \*     \*     \*

(e) THEFT LOSSES.—For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss.

[4] In his additional reply brief the respondent states that he "agrees in theory with petitioner's contentions on this point, especially with its implied premise that the remedy afforded respondent under Code sections 1311–1315 is the appropriate procedural device which should have been followed in this case." He has also pointed out that he offered to settle this case by conceding the allowability of the total embezzlement loss in the taxable year ended Sept. 30, 1965, if the petitioner would agree to the appropriate adjustments under secs. 1311–1315 to its tax liability for the barred years. However, respondent says that, in the absence of such mutual and reciprocal agreements, he "simply is not in a position to concede the loss issue without a Court adjudication of the matter."

It is perfectly clear that the allowance of a deduction in the taxable year ended September 30, 1965, for the full amount of the unrecovered embezzled funds will result in a double tax benefit because of the amounts previously written off by the petitioner as cost of goods sold in prior years. But the key to the decision here lies in the fact that the petitioner *erroneously* deducted nonexistent purchases in computing its cost of goods sold for prior years. Respondent is seeking in this proceeding to make adjustments for those prior errors after the statute of limitations has run for the earlier years.

The prohibition against double deductions evolved in the context of cases where the taxpayer *correctly* treated an item in an earlier barred year and received a tax benefit therefrom and then sought to obtain a similar tax benefit in a later year. This was the case in *Charles Ilfeld Co.* v. *Hernandez, supra;* and in *United States* v. *Skelly Oil Co., supra,* cited by the respondent. And in *R. G. Robinson, supra,* this Court carefully pointed out that it was not convinced that the taxpayer incorrectly treated the items in question on his returns for the earlier years (see 12 T.C. at 249) and the Court of Appeals expressly recognized this significant fact (see 181 F.2d at 18).[5] Furthermore, in the *Robinson* case the taxpayer took certain deductions which fully depleted his tax basis in certain timber rights. In 1942 he sustained a casualty loss equal to the value of the timber rights. He then attempted to claim a casualty loss deduction for the value loss which was sustained. However, since his basis in the timber rights had been reduced to zero as the result of prior deductions which appeared to be *properly* claimed, there was no basis remaining to be deducted at the time the loss was incurred. By contrast, the present case involves the embezzlement of cash which is neither depreciable nor depletable. Hence the *Robinson* case is distinguishable on its facts.

If we were to apply the doctrine prohibiting double deductions in a situation such as this, where the petitioner's action in earlier years was *erroneous,* we would turn that doctrine into a sword to pierce the shield of repose provided by the statute of limitations, and there would appear to be little need for the mitigation provisions applicable to double deductions contained in sections 1311–1315, and particularly section 1312(2). Cf. *Adolph B. Canelo III,* 53 T.C. 217, 226–227 (1969), affirmed per curiam 447 F.2d 484 (C.A. 9, 1971). Moreover, a deduction which is *incorrectly* taken in one year should be corrected by eliminating it from the year in which it was taken. *Lucas* v. *American Code Co.,* 280 U.S. 445 (1930); *Brown* v. *Helvering,* 291 U.S. 193 (1934). It should not be used as an offset in another year because that would take it out of the proper accounting period. See *Commissioner*

---

[5] In view of these circumstances we think the rather broad language used by the Court of Appeals for the Fifth Circuit, to which an appeal in this case would lie, is dicta and therefore is not binding upon us.

v. *Mnookin's Estate,* 184 F. 2d 89, 92 (C.A. 8, 1950), affirming 12 T.C. 744 (1949).

When previously faced with a similar question, this Court held that the deduction must be allowed in its proper year and that the Commissioner's recourse is through the correction procedures set forth in sections 1311 through 1315. *Kenosha Auto Transport Corporation, supra;* and *North Carolina Granite Corp.,* 43 T.C. 149, 168 (1964). In the *Kenosha* case we noted that this approach seemed necessary if recognition is to be given to the annual accounting period principle and the purpose underlying the statute of limitations. We commented at page 425:

Our jurisdiction attached only to the year before us (in this case, 1948) and the question before us is solely the propriety or impropriety of a deduction taken in that year. There is no basis for departure from these fundamental principles on so-called equitable grounds. No factor of estoppel is presented. Moreover, as indicated *infra*, it appears that respondent has an adequate remedy under section 1311, *et seq.,* of the Internal Revenue Code of 1954.

Accordingly, we hold under these circumstances that the petitioner is entitled to an embezzlement loss deduction in the amount of $605,-116.52 for its taxable year ended September 30, 1965. It therefore follows that the petitioner is also entitled to net operating loss carry-back deductions for the taxable years ended September 30, 1962, September 30, 1963, and September 30, 1964.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TANNENWALD, *J.,* concurring: I start from the premise that it would be entirely proper for us to sustain respondent's determination on a legal principle not asserted by him.[1] In this context, the dissenters are clearly correct in their approach. The only difficulty is that the legal principles upon which their conclusions rest are not applicable to the issue presented herein. This becomes apparent when it is recognized that two *different items* are involved: (1) *Cash* for the embezzlement of which a deduction is claimed; and (2) *nonexistent purchases* which were erroneously taken into the computation of costs of goods sold in earlier years. The dissenters fail to take this crucial distinction into account and consequently inject statutory provisions and decided cases where the *same item* was involved in both the earlier and later years. Because of my concern that such failure on the part of the dissenters will becloud the reasoning which should be applied herein, I am constrained to add my views.

I deal first with Judge Quealy's attempt to fit this case into the mold of inventory shortages. In such situations, there is nothing

---

[1] See *Harold W. Smith,* 56 T.C. 263, 291, fn. 17 (1971).

fictitious about the purchases; the goods have been acquired and are included in inventory. Thus, it is the *same item* that is the subject of the theft and the deduction. When closing inventory is determined at the end of the taxable year, thefts occurring during the year are automatically taken into account and the reduced amount of such inventory inevitably effects an increase in the cost of goods sold and a corresponding reduction in gross profit. The inventory, cost of goods sold, and gross profit have been *correctly* computed to reflect losses that occurred and were in fact discovered. Since the theft and the discovery occur in the same taxable year, respondent's regulations properly specify that the provisions dealing with theft losses do not apply to such losses as are "reflected in the inventories of the taxpayer." See sec. 1.165–8(e), Income Tax Regs. Obviously, in such a situation, allowance of a *second* theft loss in another taxable year when the "thief is caught" would run directly counter to the rule against double deductions.

By way of contrast, purchases, although taken into account in computing cost of goods sold, are not "reflected" in inventory.[2] Where purchases are fictitious there is no way in which the taxpayer can "discover" the loss in the same taxable year as he can where a theft of existing inventory occurs. When fictitious purchases are pumped into the computation of cost of goods sold, they serve to increase such cost and consequently to reduce gross profit, thereby effectuating a reduction in taxable income. But it is not the purchases which have been stolen, because, by hypothesis, they did not exist. Rather, the theft is of cash, which comes from sales that have been properly accrued and included in gross sales and therefore have increased taxable income. See p. 524 *infra*. What happens is that there are *two different items*—one, sales, which have been *correctly* accrued, and the other, the fictitious purchases, which have been *erroneously* utilized as an offsetting item.

I turn now to Judge Simpson's "reduction in basis" approach. All of the cases cited in his dissent, with one exception, involve the basis of property and the extent to which the basis of a given item of property should be reduced by virtue of deductions in a prior year. In several, the deductions in the prior year appear to have been proper; in the others, expenditures had been expensed rather than capitalized or excessive depreciation had been taken. The point is, however, that, unlike the situation herein, in each of the cases the deductions in the earlier barred years related to the *same item* of property. Equally significant is the fact that, again with one exception, all the cases involved expenditures in the nature of depreciation or depletion and

---

[2] The classic computation of cost of goods sold is opening inventory plus purchases less closing inventory.

consequently fell within the statutory mandate that basis should be adjusted to the extent that such expenditures are *"allowed* * * * but not less than the amount allowable." See sec. 1016; e.g., *Carloate Industries, Inc.* v. *United States,* 354 F. 2d 814, 817 (C.A. 5, 1966); *United States* v. *Koshland,* 208 F. 2d 636, 639 (C.A. 9, 1953).

The one exception is *Waldheim Realty & Investment Co.,* 25 T.C. 1216, 1219 (1956), reversed on another issue 245 F. 2d 823 (C.A. 8, 1957). In that case, the taxpayer had deducted the entire amount of premiums on insurance for the protection of its properties in the year of payment even though the coverage obtained extended to subsequent years. This Court held in the first instance that the deduction had to be prorated over the years of coverage and then denied the taxpayer's alternative claim for a deduction in respect of coverage for the year before the Court for premiums which had been fully deducted in prior barred years. The Eighth Circuit Court of Appeals reversed on the primary issue and expressly noted that it consequently did not reach the alternative issue. See 245 F. 2d at 828. Admittedly, this Court's rationale (see 25 T.C. at 1219) seems to support Judge Simpson's position, although the reversal on the primary issue leaves our decision on the alternative issue on less firm ground than otherwise might be the case (cf. *Crosley Corporation* v. *United States,* 229 F. 2d 376 (C.A. 6, 1956) (taxpayer was permitted to capitalize an item expensed in earlier barred years)). The significant fact, however, is that the case involved the *same item* in both the year at issue and the barred year. Here, by way of contrast, we have *two different items*—the fictitious purchases and the cash. There can be no escape from the premise that the basis of cash is its actual value. Nor is there any doubt but that the petitioner was required, in computing his gross income, to accrue the sales which produced the embezzled funds. Cf. *Donohue* v. *Commissioner,* 323 F. 2d 651 (C.A. 7, 1963), affirming 39 T.C. 91 (1962); *Casy O'Brien,* 36 T.C. 957, 962 (1961), affd. 321 F. 2d 227 (C.A. 9, 1963). See also *Alsop* v. *Commissioner,* 290 F. 2d 726, 728 (C.A. 2, 1961), affirming on other grounds 34 T.C. 606 (1960). It does not follow from the fact that fictitious purchases—a separate and distinct item—were *erroneously* included in cost of goods sold and served to reduce petitioner's taxable income that they be accorded any different treatment from any other type of erroneous deduction in a prior year which produces a similar result.

In view of the foregoing, the approaches of Judges Quealy and Simpson miss the mark and the majority properly and correctly focused on the applicability of the double-deduction principle within the governing boundaries of this case: (1) Whether there was a *proper* deduction in the prior year, in which event that principle would control; or (2) whether there was an *erroneous* deduction in the prior

year, in which event the respondent is remitted to whatever remedy he may have under sections 1311–1315. The majority focus is consequently not irrelevant but essential. Moreover, it is certainly not lacking in "commonsense"—a concept which, I might add, has a firm foundation in the underlying purpose of statutes of repose.

FORRESTER and HALL, *JJ.*, agree with this concurring opinion.

---

SIMPSON, *J.*, dissenting: As a result of the way this case was presented, the Court was tempted to consider irrelevant issues, and it yielded to that temptation and has reached a regrettable decision.

Section 165(a) allows a deduction for a loss that is not compensated for by insurance or otherwise. However, section 165(b) limits the deduction to the basis of the destroyed property. If part of the basis has previously been deducted through depreciation or otherwise, the basis must be adjusted, and the amounts previously deducted cannot again be deducted under section 165. *Carloate Industries, Inc.* v. *United States*, 354 F. 2d 814, 817 (C.A. 5, 1966); *United States* v. *Koshland*, 208 F. 2d 636, 639 (C.A. 9, 1953); *Fred Rosenthal*, 48 T.C. 515, 527 (1967), affd. 416 F. 2d 491 (C.A. 2, 1969). If the costs of property were deducted when acquired, then the property has no basis that is deductible under section 165. *Bessie Knapp*, 23 T.C. 716, 720 (1955); *J. E. Mergott Co.*, 11 T.C. 47, 51 (1948), affd. 176 F. 2d 860 (C.A. 3, 1949). A petitioner claiming a deduction under section 165 has the burden of proving that any destroyed property had a basis deductible under such section. *I. Hal Millsap, Jr.*, 46 T.C. 751, 760 (1966), affirmed on other issues 387 F. 2d 420 (C.A. 8, 1968); *Samuel Towers*, 24 T.C. 199, 239 (1955), affirmed on other issues sub nom. *Bonney* v. *Commissioner*, 247 F. 2d 237 (C.A. 2, 1957); cf. *Burnet* v. *Houston*, 283 U.S. 223 (1931).

The majority relies on *Kenosha Auto Transport Corporation*, 28 T.C. 421 (1957), but Judge Fisher who decided that case also decided *Kaufman's, Inc.*, 28 T.C. 1179 (1957), later in the same year. In *Kaufman's*, he held that when the basis of property had been previously deducted, albeit erroneously, there was no basis to depreciate in the year before him. In distinguishing *Kenosha*, he said, 28 T.C. at 1187–1188:

The issue here is not the same as in *Kenosha Auto Transport Corporation*, * * * in which the Commissioner challenged a deduction properly taken by taxpayer in the year before the Court on the ground that it had been erroneously deducted in a prior year. We there held that we must look to the proper treatment of the item in the year before us (and that the respondent must look to sec. 1311, *et seq.*, I.R.C. 1954, for any possible adjustment for prior years). In the instant case, while petitioner is, of course, entitled to a reasonable allowance for depreciation for the year in question, the basis therefor must be limited to unrecovered cost and cannot include a factor of cost already recovered in prior years.

In other cases, this Court has held that when the cost of an item has been previously deducted such cost cannot be deducted again, regardless of whether the earlier deduction was erroneous. Thus, in *Waldheim Realty & Investment Co.*, 25 T.C. 1216, 1219 (1956), reversed on other issues 245 F. 2d 823 (C.A. 8, 1957), the Court held that the premiums for insurance covering a period of years could not be deducted when paid but must be prorated over the period of the coverage. However, the Court also held that the premiums which had been previously deducted could not be deducted again in the years before it. Similarly, in *Firemen's Insurance Co.*, 30 B.T.A. 1004, 1011, 1012 (1934), this Court held that there could be no depreciation for property the costs of which had been erroneously deducted as an expense in prior years. See also *Reliable Incubator & Brooder Co.*, 6 T.C. 919, 929 (1946).

The majority attempts to explain away our decision in *R. G. Robinson*, 12 T.C. 246 (1949), affd. 181 F. 2d 17 (C.A. 5, 1950), by indicating that the earlier allowance may have been proper. However, the Fifth Circuit treated the matter as if the earlier allowance were erroneous and held that a deduction for the year in issue was not allowable because of such earlier erroneous treatment of the item.

These cases illustrate the reasons for the regulations providing that if the cost of an item is reflected in inventory, a theft of such an item is not deductible under section 165. Sec. 1.165–8(e), Income Tax Regs. When such costs are taken into consideration in computing the cost of goods sold, the effect is the same as if they had been deducted. See *R. G. Robinson, supra* at 248. Thus, there is no basis to be deducted again under section 165. In this case, it was money that was stolen by reason of the fictitious purchases, but since the amounts of such fictitious purchases were reflected in the inventory of the petitioner, the tax consequences are the same as if products had in fact been purchased and subsequently stolen from the inventory. In either case, the costs have been taken into consideration in computing taxable income, and there is no remaining basis for the stolen money.

RAUM and GOFFE, *JJ.*, agree with this dissent.

---

QUEALY, *J.*, dissenting: I must disagree with the opinion of the majority. It clearly contravenes the intent of the Congress. More important, it is completely lacking in "commonsense," which in itself should govern our decisions.

The opinion of the majority states that "the key to the decision here lies in the fact that the petitioner *erroneously* deducted non-existent purchases in computing its cost of goods sold for prior years." In this respect, the decision fails to recognize that we are not here

dealing with a statutory deduction per se, but with a defalcation or dishonest act on the part of an employee, the effect of which is to produce a shortage in inventory. Such defalcations have become a source of widespread concern, with estimated losses ranging in billions of dollars. No one knows the real amount of the loss or the extent to which it may be attributed to thefts by the employees or to shop-lifting by the customers.[1] Nonetheless, such losses are automatically reflected in the inventory computation and become a part of the cost of goods sold. There is nothing "erroneous" in this procedure. It is universally followed and accepted for tax purposes. To hold that a taxpayer should be permitted in some later year, when the thief is caught, to again deduct the loss, produces an absurd result. I am unable to agree that the statute must be so construed.

Section 165(e) was enacted as a part of the major restructuring of the Internal Revenue laws in the Revenue Act of 1954. In explanation, the report of the Committee on Ways and Means accompanying that Act (H. Rept. No. 1337, 83d Cong., 2d Sess., p. A46) stated:

Subsection (e) is a new provision for the treatment of theft losses. There was no comparable statutory provision in the 1939 code. Regulation 118, section 39.43–2 provides that a loss from theft or embezzlement is ordinarily deductible for the year in which sustained. There has been considerable uncertainty and litigation about the application of this rule. Under the new provision, the loss will always be deductible in the year in which the taxpayer discovers the loss. The rule will, of course, also apply to embezzlement, larceny, etc. If the loss is treated as sustained under this subsection, there can be no deduction for the same loss under the 1939 code for a prior year (see sec. 7852).[2]

It is clear that section 165(e) was enacted in order to set at rest the uncertainty which had arisen with respect to those losses from theft and the like, which could not be reflected as a deduction from income unless and until discovered by the taxpayer. Where the method of accounting used by a taxpayer is such that a loss is automatically taken into account in computing its taxable income in the year incurred, there is no basis for application of section 165(e). I must disagree with the majority, therefore, in its premise that the fictitious purchases involved in this case were "*erroneously*" deducted as a part of the cost of goods sold in the year of the defalcation.

In the determination of its taxable income, the petitioner resorted to the use of inventories, as required by section 471. The petitioner's opening inventory *plus* purchases during the taxable year *less* the closing inventory for such year was reflected on its books and its income tax returns as the cost of goods sold. By this method of account-ing, any loss sustained by the petitioner on account of fictitious

---

[1] U.S. News & World Report, vol. 72, No. 7, Feb. 14, 1972, pp. 70–71.

[2] To the same effect, see S. Rept. No. 1622, 83d Cong., 2d Sess., p. 198.

purchases was reflected as a part of the cost of goods sold in the year in which such purchase occurred. Whether the petitioner was conscious of the defalcation or not, this method af accounting automatically resulted in the deduction of the loss in the year incurred. The enactment of section 165(e) was not intended to change this procedure.[3] On the contrary, for purposes of section 165(e), the deduction of the loss presupposes its "discovery." There thus remained no undiscovered losses for the petitioner to deduct in its taxable year ended September 30, 1965, other than the amount reflected in the inventory process and credited to the cost of sales for such year.

IRWIN and GOFFE, *JJ.*, agree with this dissent.

