T.C. Memo. 1999-285


UNITED STATES TAX COURT


ANDY RATAICZAK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2335-97.                    Filed August 27, 1999.


Andy Rataiczak, pro se.

Stephen J. Neubeck, for respondent.


MEMORANDUM OPINION

GALE, Judge:  Respondent made the following determinations with respect to petitioner's 1993 and 1994 Federal income taxes:

| Year | Deficiency | Addition to Tax Sec. 6651(a) | Penalty Sec. 6662 |
|------|-----------|------------------------------|-------------------|
| 1993 | $16,649 | --- | $3,330 |
| 1994 | 8,820 | $2,205 | 1,764 |

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

We must decide the following issues: (1) Whether petitioner had unreported income. We hold that he did, to the extent provided below. (2) Whether petitioner is entitled to a depreciation deduction for towing equipment for each of the years in issue. We hold that he is. (3) Whether petitioner is liable for an addition to tax under section 6651(a). We hold that he is. (4) Whether petitioner is liable for accuracy-related penalties under section 6662(a). We hold that he is not.

Some of the facts have been stipulated and are so found. We incorporate by this reference the stipulation of facts and attached exhibits. At the time of filing the petition, petitioner resided in Quaker City, Ohio.

From March 1990 to September 1994, petitioner operated a service station in Barnesville, Ohio. The station had four gasoline pumps, a diesel and kerosene pump, and two service bays. In addition to fuel sales, petitioner sold miscellaneous items such as chips, candy, soda pop, and tobacco. Also, petitioner sold and installed tires and other auto parts in connection with the station's service and repair business. Petitioner closed the service station in September 1994 because he was unable to make a

profit from its operation. Upon closing the station, petitioner was able to return some, but not all, of his inventory. At the time of trial, petitioner still owed suppliers for debts that arose during the years in issue. Petitioner kept his books and records for his business under the cash receipts and disbursements method of accounting.

Introduction

In the notice of deficiency, respondent determined that petitioner had unreported income in the amounts of $62,400 in 1993 and $43,918 in 1994. Respondent used the percentage markup method, under which respondent applied a percentage markup to petitioner's cost of purchases to compute petitioner's gross receipts. When a taxpayer fails to keep adequate books and records, respondent is authorized by section 446 to reconstruct the taxpayer's income using any reasonable method. See Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989); Rungrangsi v. Commissioner, T.C. Memo. 1998-391. The percentage markup method is, in general, a permissible method. See Bollella v. Commissioner, 374 F.2d 96 (6th Cir. 1967), affg. T.C. Memo. 1965-162; Rungrangsi v. Commissioner, supra.

Petitioner's fuel sales are not at issue in this case. Respondent's determinations of unreported income were based on sales of tires and auto parts, as well as chips, candy, soft drinks, and tobacco. With respect to these items, respondent

determined, and the parties agree, that petitioner's costs of purchases exceeded reported receipts.  For 1993, petitioner's reported receipts from auto service and repairs, including the sale of parts and fluids (e.g., oil, coolant, brake fluid, etc.), totaled $23,688 whereas his cost of purchases for these items totaled $69,493.[1]  Similarly, his reported receipts from the sale of chips, candy, soft drinks, and tobacco totaled $6,658 whereas his cost of purchases for these items totaled $8,686.  For 1994, reported receipts from the first category totaled $6,348 whereas cost of purchases totaled $41,209.  In the second category, reported receipts were $2,744 whereas cost of purchases totaled $3,939.

Petitioner has the burden of proof.  See Rule 142.  We found petitioner to be a credible witness, and we find that he has carried his burden of proof with respect to some of the issues before us.

Chips, Candy, Soft Drinks, and Tobacco

With respect to chips, candy, soft drinks, and tobacco, we sustain respondent's determinations.  For these items, respondent applied a markup of 25 percent, which was determined using (1)

---

[1] The parties' stipulation incorrectly states that these figures were $83,402 and $101,073, respectively, for 1993.  The other evidence in the record makes clear that the foregoing figures were the correct figures for 1992, not 1993.  The Court may disregard a stipulation where it is clearly contrary to the evidence in the record, and we do so here.  See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195-196 (1989).

- 5 -

industry data compiled and published by Robert Morris Associates, and (2) information provided by petitioner and two of petitioner's suppliers. Petitioner does not dispute respondent's use of a 25-percent markup for these items. Further, petitioner did not present any evidence to show that respondent's determinations were otherwise in error.

## Auto Service and Repairs, Including Sale of Parts and Fluids

With respect to receipts from auto service and repairs, including the sale of parts and fluids (e.g., oil, coolant, brake fluid, etc.), we sustain respondent's determinations only in part. Although the percentage markup method is generally acceptable, see Bollella v. Commissioner, supra, the particular facts and circumstances of this case raise two questions: (1) Whether respondent chose an acceptable markup percentage, and (2) whether respondent applied the markup properly. Although we agree with respondent's choice of a 22.8-percent markup, we find that respondent did not apply the markup properly and therefore that petitioner did not receive all the income that respondent determined.

### Did Respondent Choose an Acceptable Markup?

Respondent applied a markup of 22.8 percent, which was determined using industry data compiled and published by Robert Morris Associates. The 22.8-percent figure represented the 1993 average gross profit for gasoline service stations with total

assets between $0 and $500,000. Petitioner estimated that he charged an average markup of between 7 and 8 percent in the sale of tires and other parts. However, the documentary evidence in the record does not support this estimate.

The parties stipulated as evidence six invoices from petitioner's service station written in 1993; however, there is evidence with respect to the applicable wholesale cost with respect to only two of these invoices. One of the invoices, to Anco, dated January 22, 1993, shows that petitioner charged $105 for tires. Petitioner contends that the wholesale cost for these tires at the time of sale was approximately $100, for a markup of approximately 5 percent. Respondent contends that the wholesale cost was $95 and concedes that the markup on tires was no more than 10 to 10.5 percent. Petitioner's cost of labor was included in the retail price of the tires. The other invoice, also to Anco, dated August 21, 1993, shows that petitioner charged $152.35 for a power steering pump, and that he charged an additional $30 for labor to install the pump. Respondent contends that the wholesale cost of the pump was $133.80 at the time of trial, based on a phone call to a local wholesaler. Using the cost at the time of trial, the markup that petitioner charged Anco for the power steering pump was $48.55 ($152.35 + $30 labor - $133.80 current cost), or 36.3 percent ($48.55 ÷ $133.80). If the time-of-trial wholesale price were adjusted for

inflation to approximate the wholesale price in August 1993, the percentage for petitioner's markup would be higher.  Although the 22.8-percent deemed markup rate used in respondent's determination is substantially higher than the 10.5-percent markup rate that has been documented for one sale of tires, respondent's deemed rate is substantially lower than the markup of at least 36.3 percent for the power steering pump.  In addition, in computing his retail price for tires and other parts, petitioner charged lower markups for his preferred customers, and Anco was one of his preferred customers.  Thus, the markups for which petitioner has produced any evidence were lower than average.  Upon review of the evidence he has presented, we conclude that petitioner has failed to demonstrate error in respondent's use of a 22.8-percent markup rate to reconstruct his gross sales figure.  See Petzoldt v. Commissioner, supra; Rungrangsi v. Commissioner, supra.

Did Respondent Apply the Markup Properly?

To determine petitioner's gross profit for the years in issue, respondent multiplied petitioner's cost of purchases by the 22.8-percent markup.  However, petitioner has provided evidence of at least two errors in this approach:  First, petitioner did not receive payment during the years in issue for all of the items that he sold, due to unpaid accounts receivable;

and second, petitioner did not sell all of the items included in the cost of purchases, due to theft loss and unsold inventory.[2]

There is no dispute in this case that petitioner used the cash basis method of accounting for his business, and that he was not required to take into income any accounts receivable that were not paid (and therefore were not actually or constructively received) during the years in issue. See sec. 446(c)(1); Fankhanel v. Commissioner, T.C. Memo. 1998-403; sec. 1.446-1(c)(1)(i), Income Tax Regs. In the notice of deficiency, respondent determined that petitioner had unpaid accounts receivable of $7,393 in 1993 and $2,517 in 1994. Petitioner, however, testified that he had unpaid accounts receivable in the amount of $25,000 in total during the years in issue. Petitioner's testimony was credible, and we accept it. Accordingly, we estimate and find that he had unpaid accounts receivable in the amount of $12,500 in each of the years in

---

[2] In addition, our finding that respondent's computation of petitioner's gross profit contains errors is buttressed by the fact that the weight of other evidence in this case goes against, and we do not believe, the conclusion that petitioner earned profits of the size determined by respondent during the years at issue. We found petitioner to be an honest and forthright witness. His testimony was plausible. He closed down the service station before the end of the second year in issue because it was not profitable. Almost 4 years later, he was still indebted to his suppliers and attempting to repay them. There is not a scintilla of evidence that petitioner's net worth, bank accounts, life style, or spending habits were altered in such a way as to suggest he was skimming cash from the business.

issue.   Thus, petitioner's gross profit should be reduced by $12,500 in each of the years in issue.

In the notice of deficiency, respondent applied the percentage markup to petitioner's entire cost of purchases during the years in issue.  However, petitioner testified that he suffered theft losses of between $1,000 and $4,000 during 1993. We accept petitioner's testimony, which was corroborated by some documentary evidence, and find that petitioner suffered losses from theft in the amount of $3,000 for tires and other parts during 1993.  Thus, petitioner's cost of purchases to which the 22.8-percent markup is applied should be reduced by $3,000 in 1993.

In addition, we find that petitioner is entitled to a theft loss deduction in the amount of $3,000 during 1993.  In general, in the case of theft of inventory, a taxpayer may either account for the loss as a reduction to closing inventory and a corresponding increase to cost of goods sold, or claim a deduction under section 165 and make a corresponding decrease to opening inventory or purchases.  See generally National Home Prods., Inc. v. Commissioner, 71 T.C. 501, 528 (1979); B.C. Cook & Sons, Inc. v. Commissioner, 59 T.C. 516, 522-523 (1972) (Tannenwald, J., concurring); sec. 1.165-8(e), Income Tax Regs.; IRS Pub. 538, Accounting Periods and Methods (1993).  In this case, petitioner's purchases have been decreased by the amount of

the theft, and therefore petitioner may claim the deduction. In general section 165(a) allows a deduction for any loss sustained during the taxable year.[3] Section 165(c)(1) limits the deduction to, among other things, losses incurred in a trade or business. Petitioner's loss qualifies. Thus, petitioner is entitled to a loss deduction of $3,000 in 1993.

Petitioner testified that in 1994, after he closed the service station, he kept some inventory that he was unable to return, and returned some inventory. Any inventory that petitioner kept or returned would not have been sold, and thus would not have contributed to gross sales. The only evidence in the record with respect to the value of unsold inventory is petitioner's testimony that he kept a case of spark plugs for which he paid $1,000. We accept this testimony, and therefore petitioner's cost of purchases to which the 22.8-percent markup is applied should be reduced by $1,000 in 1994.

Depreciation

In the notice of deficiency, respondent disallowed depreciation deductions for a tow truck and its engine in the amounts of $1,592 for 1993 and $1,137 for 1994. Respondent determined that petitioner had not proven that this equipment was used in a trade or business or for the production of income. In

---

[3] Any loss arising from theft is treated as sustained in the year discovered. See sec. 165(e). We find that petitioner discovered the loss in 1993.

- 11 -

general, section 167(a) authorizes a depreciation deduction for the exhaustion, wear and tear of property used in a trade or business or held for the production of income.  Petitioner testified that he earned approximately $2,000 of income from his towing operation during each of the years in issue.  Although petitioner did not separately account for this income, we found petitioner's testimony to be credible.  Moreover, respondent's determination in the notice of deficiency requires us to believe that petitioner, who operated a service station, owned towing equipment but did not use it in his trade or business or for the production of income.  We find that he did and hold that petitioner is entitled to the deductions for depreciation that were disallowed by respondent.

Addition to Tax and Accuracy-Related Penalties

For petitioner's 1994 tax year, respondent determined an addition to tax under section 6651(a) in the amount of $2,205. In general, section 6651(a) applies in the case of failure to timely file a return, unless it is shown that the failure was due to reasonable cause and not willful neglect.  Petitioner filed his 1994 tax return more than 4 months after the due date, and there is no evidence of reasonable cause.  Therefore, petitioner is liable for an addition to tax under section 6651(a) for 1994.

For petitioner's 1993 and 1994 tax years, respondent determined accuracy-related penalties under section 6662(a) in

the amounts of $3,330 and $1,764, respectively.  Section 6662(a) applies in the case of negligence or disregard of rules or regulations.  See sec. 6662(b)(1).  "Negligence" includes the failure to keep adequate books and records.  See sec. 1.6662-3(b), Income Tax Regs.  We note that although petitioner did not keep formal inventories for any of the items he sold except for fuel, his records were adequate enough to allow the parties to stipulate his costs of purchases in each of the separate categories.  Moreover, petitioner will be relieved of the penalty under section 6662(a) if there was reasonable cause for the underpayment and he acted in good faith.  Sec. 6664(c)(1).  Reasonable cause and good faith include "an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge and education of the taxpayer."  Sec. 1.6664-4(b)(1), Income Tax Regs.  Further, "Reliance on * * * professional advice * * * constitutes reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith."  Id.  We find that petitioner acted with reasonable cause and in good faith based on his experience, knowledge and education, and on the fact that he reasonably relied on an accountant in filing his tax returns.  Therefore, he is not liable for the accuracy-related penalty under section 6662(a).

To reflect the foregoing,

Decision will be entered

under Rule 155.