**WALDHEIM REALTY AND INVESTMENT COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 15651.

United States Court of Appeals
Eighth Circuit.

June 4, 1957.

Ray Eder, St. Louis, Mo. (H. M. Stolar and Robert C. Johnson, St. Louis, Mo., were with him on the brief), for petitioner.

Sheldon I. Fink, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Hilbert P. Zarky, Attys., Dept. of Justice, Washington, D. C., were with him on the brief), for respondent.

Before WOODROUGH, VOGEL, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Taxpayer petitions this court to review the decision of the Tax Court determining taxpayer owes additional income taxes for the years 1950, 1951, and 1952. The facts are stipulated. Taxpayer is a Missouri corporation engaged in the business of ownership and management of real estate. During the period involved it kept its records and made its income tax returns on a cash basis. Taxpayer protected its property with insurance coverage. In many instances the premiums paid purchased insurance coverage for a number of years. On its records and for all purposes, including fed-

eral income tax purposes, taxpayer, at all times since its incorporation in 1905, has consistently deducted from gross income as a business expense the entire amount of insurance premiums paid in the respective years in which the premiums were paid. Taxpayer's returns have been frequently examined, and no previous objection has been made to the manner in which it treated its insurance payments.

The primary issue upon this appeal is whether a cash basis taxpayer, who has uniformly treated insurance premiums as a business expense in the year the premiums were paid, may deduct such premiums as a business expense in the year paid when part of such premiums was for insurance coverage for subsequent years, or whether the taxpayer must prorate the premiums paid over the years of coverage.

An alternate issue, in event of a finding adverse to the taxpayer upon the primary issue, is whether taxpayer may deduct in the years 1950 to 1952 that portion of insurance premiums paid in the 1947–1949 period which is for insurance coverage in the 1950–1952 period, it being conceded that the taxpayer had deducted the full amount of premiums paid in computing its income tax for the years 1947 to 1949.

The Tax Court held against the taxpayer upon both the primary issue and the alternate issue. The opinion of the Tax Court is reported at 25 T.C. 1216.

The Commissioner takes the position that prepaid insurance is a capital asset, the cost of which must be prorated or amortized over the life of the policy. He asserts that the amortized deduction must be claimed under section 23(*l*) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(*l*).[1] The Commissioner re-

lies largely upon Commissioner of Internal Revenue v. Boylston Market Ass'n, 1 Cir., 131 F.2d 966. There the court recognized that the line to be drawn between capital expenditures and business expenses often presents a close question, but concluded that prepaid insurance should be treated as a capital asset. The court relied upon cases which it cited treating prepayment of rent, bonus for acquisition of leases, bonus for cancellation of leases, and commissions for acquisition of leases, as capital expenditures subject to amortization. The court overruled Welch v. DeBlois, 1 Cir., 94 F.2d 842. It should be noted that none of the First Circuit judges participating in the DeBlois case participated in the Boylston Market opinion. In the DeBlois case the court calls attention to the fact that insurance policies are frequently taken out for a number of years to obtain the benefit of lower rates. The court, in a well considered opinion, mentions that in many businesses more supplies are acquired than can be consumed during the accounting period, and then states at page 844:

" * * * If the cost of insurance is apportioned between different years, the cost of many other kinds of materials and supplies and equally ordinary requirements, must also be apportioned, and great difficulties in accounting will be introduced which are foreign to the principle which the statute contemplates and will serve no useful purpose. Expenditures for such things are in no true sense capital expenditures. * * * "

The section 23(*l*) depreciation deduction is allowed for exhaustion of property used in a trade or business or for the production of income.

---

[1]. Section 23(*l*) provides for a reasonable allowance for depreciation. Section 23(n) provides that the basis upon which exhaustion is to be allowed in respect to any property shall be as provided in section 114, 26 U.S.C.A. § 114. Section 114 in turn provides that the basis upon which exhaustion is to be allowed is the adjusted basis provided in section 113(b),

26 U.S.C.A. § 113(b). Section 113(b) provides that the adjusted basis shall be the basis determined under section 113 (a), adjusted for amortization to the extent of the amount allowed, but not less than the amount allowable, as deductions in computing net income under this chapter or prior income tax laws.

Regulations 118, section 39.41–3(b) provides:

"(b) Expenditures made during the year shall be properly classified as between capital and expense; that is to say, expenditures for items of plant, equipment, etc., which have a useful life extending substantially beyond the year should be charged to a capital account and not to an expense account".

Insurance premiums certainly are not expenditures for items of plant, equipment, etc.

■ Insurance doubtless serves a useful business function in protecting the taxpayer's investment from casualty loss. The Government, in the event of loss, also receives some benefit from insurance as casualty losses are not deductible to the extent that they are compensated for by insurance. Section 23(e), Internal Revenue Code of 1939. The payment of the insurance premium adds nothing to the taxpayer's plant or equipment or his ability to produce income. In this respect the insurance premiums differ from prepaid rent, lease bonuses, and commissions, as such expenditures are for the purpose of providing the taxpayer the place in which to carry on his business. Merten's Law of Federal Income Taxation, Vol. 2, section 12.25, p. 78, impliedly recognizes that insurance is not a typical capital asset, stating:

"There are, however, cases in which the expenditure cannot be said truly to result in the acquisition of a capital asset, but where the effect and benefit of the payment or obligation will extend over future periods. In such cases proration has been required of a taxpayer using the cash method, e. g., in situations involving prepaid insurance premiums. * * *"

The amortization statutes apply to capital assets and should not be stretched to items which do not fall in the capital asset classification.

The Tax Court has uniformly held that insurance for a one year period is a deductible expense even though it carries protection for part of a subsequent year. Kauai Terminal, Ltd. v. Commissioner, 36 B.T.A. 893, 898; Bell v. Commissioner, 13 T.C. 344, 348. The Tax Court has likewise held that the cost of insurance running more than one year should be prorated. Higginbotham-Bailey-Logan Co. v. Commissioner, 8 B.T.A. 566, 577; Jephson v. Commisssioner, 37 B.T.A. 1117, 1120; Martha R. Peters v. Commissioner, 4 T.C. 1236, 1242.

In our present case the Tax Court upheld the disallowance of the deduction of that part of the insurance premiums applicable to the years subsequent to 1952. The taxpayer had claimed a business expense deduction for all insurance premiums paid in each year here involved. In effect, the business expense deduction was allowed to the extent of the prorata cost thereof for the period ending in 1952. Such treatment was inconsistent with considering prepaid insurance as a capital asset. It would appear that, logically, prepaid insurance should in its entirety be treated either as a capital asset or a business expense.

■ The main reason assigned in Boylston Market and the Tax Court decisions why insurance should be treated as a capital asset is that the unexpired insurance has a surrender value. The same argument would be applicable to insurance running for a one year period, extending into a subsequent taxable year. It is common knowledge that the surrender value of a policy cancelled by the insured is upon a short term rate basis, and considerably less than the prorata return of the premium for the unexpired term. We do not believe that the fact that some salvage value could be realized at the end of the taxable year out of prepaid insurance is sufficient to make the prepaid insurance a capital asset. Some salvage value could also be realized out of miscellaneous supplies unused and on hand at the end of the taxable year, but this fact alone would be insufficient to warrant the classification of such items as capital assets.

We are of the opinion that prepaid insurance under the circumstances of this case is not a capital asset. Under the revenue statutes the depreciation deduction is only applicable to capital assets.

We now consider whether the entire premiums paid for insurance running more than one year are properly deductible as a business expense for the year of payment. Deductions of business expenses are authorized by section 23(a). Regulations 118, section 39.23(a) lists deductible business expenses, and included in the listed deductions is "insurance premiums against fire, storm, theft, accident, or other similar losses in the case of a business." The regulation contains no express limitation as to the period of insurance coverage.

The Commissioner, relying upon sections 41 and 43 of the Internal Revenue Code, 26 U.S.C.A. §§ 41, 43, asserts that the method of accounting employed by the taxpayer with respect to the insurance premium payments does not properly reflect income, and that the Commissioner is authorized to determine income by such method as will, in his opinion, clearly reflect income.

Section 41 provides in substance that net income shall be computed in accordance with the method of accounting regularly employed in keeping the books of the taxpayer, but that, if the method employed does not clearly reflect income, the computation shall be made in accordance with such method as, in the opinion of the Commissioner, clearly reflects the income. Section 43 provides that in the case of a taxpayer on a cash basis deductions shall be taken as paid or incurred, unless, in order to clearly reflect the income, the deductions or credits should be taken as of a different period.

It is undisputed in our present case that the taxpayer's income was computed in accordance with the method of accounting regularly employed by it for many years.

This leaves the issue of whether the Tax Court was justified upon this record in upholding the Commissioner's determination that the taxpayer's long established practice of deducting prepaid insurance covering a period of years in the year of payment distorted its income.

The Supreme Court had occasion to interpret sections 23(a), 41, and 43 in Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725. While that case involved an accrual basis taxpayer, who sought credit against 1935 income for processing taxes collected in 1935 but refunded to customers in later years after the tax was declared unconstitutional, the principles announced are applicable to our present case. The Court first shows that revenue acts have uniformly assessed tax upon the basis of annual returns showing the net results of taxpayer's transactions during a fixed accounting period, and then states that the rationale of the system is this (321 U.S. at page 286, 64 S.Ct. at page 598):

"It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation."

And then continues (321 U.S. at pages 286–287, 64 S.Ct. at page 599):

"This legal principle has often been stated and applied. The uniform result has been denial both to government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount.

"But the petitioner urges that Section 43 has altered the rule so that a hybrid system, partly annual and partly transactional, may, within administrative discretion, be substituted for that of annual accounting periods. It urges that the change was due to the desire of Congress to pre-

vent distortion of true income. This must mean distortion of true income, not of a given year, but, in the light of ultimate gain, from a series of transactions over a period of years, growing out of, or in some way related to, an initial transaction in the taxable year. The very section on which petitioner relies, however, reiterates the adherence of Congress to the system of annual periods of computation.

\*   \*   \*   \*   \*   \*

"We are of opinion that the purpose of the language which Congress used was not to substitute, whenever in the discretion of an administrative officer or tribunal such a course would seem proper, a divided and inconsistent method of accounting not properly to be denominated either a cash or an accrual system."

We now look to the evidence in this case in the light of the foregoing standards.

The taxpayer has uniformly, since the inception of the federal income tax law, charged all insurance premiums paid as a business expense in the year paid. This appears to be an entirely proper procedure under the cash method of accounting. Computations of income under the method used by the taxpayer and that urged by the Commissioner may well produce slightly different results in an individual year. However, it is extremely doubtful whether any substantial difference would result over a period of years. If the tax were computed upon each theory from 1913 to the present time, it is very likely that the variance in tax would be extremely small, and the possibility is that computation under the taxpayer's theory would somewhat favor the Government because of the tendency on the part of Congress to constantly raise the tax rates. The taxpayer's method of charging the insurance premiums when paid resulted in its taking its deduction in an earlier year.than the deduction would have been taken under the amortization method.

ᵗThe amounts of the insurance premiums paid in the years 1947 to 1952, as stipulated, are:

| Year | Amount |
|------|--------|
| 1947 | $ 7,596.15 |
| 1948 | 10,966.58 |
| 1949 | 9,835.06 |
| 1950 | 7,576.43 |
| 1951 | 13,125.74 |
| 1952 | 9,794.67 |

The prorated portions of premiums paid in 1947 to 1949, applicable to the years here involved, are:

| Year | Amount |
|------|--------|
| 1950 | $6,295.19 |
| 1951 | 3,705.11 |
| 1952 | 1,253.25 |

The prorated portions of insurance premiums paid in 1950, 1951, and 1952 applicable to such years are:

| Year | Amount |
|------|--------|
| 1950 | $3,092.05 |
| 1951 | 6,025.41 |
| 1952 | 9,171.40 |

Using the above stipulated figures under the Commissioner's proration theory, consistently applied, by adding proration of the insurance purchased in the 1947–1949 period to the 1950–1952 proration, the insurance deduction for the 1950–1952 period would aggregate $29,542.21, as compared to $30,496.84 under the taxpayer's theory. The slight advantage to the taxpayer in these figures is likely caused by the relatively high amount of premiums paid in 1951, much of which under the Government's theory was allocated to subsequent years.

The fact that computation over a short period can favor either the Government or the taxpayer is illustrated by the DeBlois and Boylston Market cases, supra. In the DeBlois case the deduction of premiums in the year paid favored the taxpayer. In the Boylston Market case the prorated method of charging insurance expense favored the taxpayer. In the Boylston Market case the Commissioner

urged that all premiums be deducted in the year paid. In each of these cases the court of appeals upheld the method of accounting employed by the taxpayer.

The problem of when a cash basis taxpayer should deduct prepaid insurance premiums on policies running more than one year has caused considerable difficulty. The Commissioner in 1934 ruled that the cost of prepaid insurance running more than one year must be prorated. G.C.M. 13148, 1934 Cum.Bull. 67. After the decision in DeBlois, supra, the Commissioner reversed his position in conformity with that decision. G.C.M. 20307, 1938 Cum.Bull. 157. After the Boylston Market decision, supra, the Commissioner reverted to his original position requiring proration. G.C.M. 23587, 1943 Cum.Bull. 213.

The only cases on the appellate level which have been cited to us, and which we have been able to find, are the Boylston Market and DeBlois cases from the First Circuit, heretofore discussed. We believe that the opinion in the DeBlois case is more persuasive than the Boylston Market opinion.

There is nothing in the record to indicate that the taxpayer's insurance program was in any way influenced by tax aspects.

We do not believe that any substantial distortion of the taxpayer's income resulted from the method in which it handled its deductions for insurance expense. Taxpayer deducted the insurance premiums in the year paid. This is the usual and ordinary way for a cash basis taxpayer to handle business expenses. To require the taxpayer to treat its insurance payments upon an accrual basis would, as the Supreme Court states in Security Flour Mills Co., supra, create "a divided and inconsistent method of accounting not properly to be denominated either a cash or an accrual system."

We do not have before us the question of whether, under appropriate circumstances, a cash basis taxpayer who regularly, upon his books and in his tax returns, charges as a business expense each year only a prorated portion of his insurance expense would thereby properly reflect his income. We express no opinion upon such issue. Some flexibility is essential in the administration of the tax laws. In Goodrich v. Commissioner, 8 Cir., 243 F.2d 686, 691, the court states:

"A measure of discretion and flexibility is essential and inherent in practical tax administration, so long as it does not amount to legal arbitrariness, unfair discrimination, or violation of a statutory provision. And on the permissibility which the Code intends generally in methods of accounting, as Mertens says, 'The intention of the Code is, no doubt, to allow discretion and permit flexibility both to the taxpayer and to the Commissioner, and it would probably be impossible to administer the income tax according to any more rigid or explicit rule'. 2 Mertens, Law of Federal Income Taxation, § 12.-05a."

Since we have found for the taxpayer on the primary issue, we do not reach the alternate issue.

The decision of the Tax Court is reversed, and this case is remanded to the Tax Court for further proceedings not inconsistent with the views expressed in this opinion.