LAS CRUCES OIL COMPANY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 859–73. Filed September 9, 1974.

*Towner Leeper* and *Jesus Samaniego*, for the petitioner.
*James N. Mullen*, for the respondent.

OPINION

FEATHERSTON, *Judge:* Respondent determined deficiencies and additions to tax with respect to petitioner's Federal income taxes for the fiscal years ending June 30, 1969, and June 30, 1970, in the following amounts:

---

[6] *United States* v. *Mitchell*, 403 U.S. 190, 205–206 (1971).

| Year | Deficiency | Addition to tax (sec. 6653(a), I.R.C. 1954) |
|------|-----------|---------------------------------------------|
| 1969 | $12,199.06 | $609.95 |
| 1970 | 5,652.17 | 282.61 |

The only issue is whether, under section 362(a)(1),[1] a corporation to which assets were transferred tax-free under section 351 takes as its basis for its opening inventory the erroneous total of the closing inventories shown on its predecessors' final returns or the actual amount of the predecessors' inventory on hand at the time of the transfer.

Petitioner Las Cruces Oil Co., Inc. (hereinafter sometimes referred to as petitioner), is a New Mexico corporation and, when the petition was filed, had its principal place of business in Bayard, N. Mex. Petitioner sells petroleum and petroleum-related products as well as automotive accessories such as tires and parts. In maintaining its books and records and computing its income taxes for the years in issue, petitioner employed the accrual method of accounting.

On July 1, 1968, the assets of two partnerships, Las Cruces Oil Co. and Neudecker Bros. Shamrock (hereinafter the partnerships or transferors), were transferred to petitioner in exchange for its stock in a transaction meeting the requirements of section 351(a).[2] The partnerships had used the accrual method of accounting in maintaining their records and filing their partnership information returns.[3]

At the end of the taxable period January 1, 1968, through June 30, 1968, the transferors' inventory sheets reflected inventory on hand, valued at cost, in the amount of $14,419.26. In computing the cost of goods sold reported on the final information returns of the two partnership returns filed for that period, the partnerships reported a total closing inventory of only $7,679.54. The discrepancy between this figure and the inventory actually on hand was due to the partnerships' failure to count in closing inventory certain gas and diesel fuel, in the amount of $6,739.72, stored underground. Respondent's brief refers to

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

[2] SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.

(a) GENERAL RULE.—No gain or loss shall be recognized if property is transferred to a corporation (including, in the case of transfers made on or before June 30, 1967, an investment company) by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. * * *

[3] The record does not state specifically that the partnerships employed the accrual method of accounting. However, the partnerships' final information returns reflect that the respective partnerships employed inventories in computing cost of goods sold. Generally, if a business uses inventories, the taxpayer is required to compute taxable income under the accrual method. See *Iverson's Estate* v. *Commissioner*, 255 F. 2d 1 (C.A. 8, 1958), certiorari denied 358 U.S. 893 (1958); sec. 1.446–1.(c)(2)(1), Income Tax Regs. Respondent does not contend that the partnerships' method of tax accounting was erroneous in any respect. We therefore infer, in the absence of any contrary evidence, that the partnerships, in compliance with the Code requirements, maintained their financial records and reported their taxable income in accordance with the accrual method.

this error as an "omission," and there is no evidence suggesting the partnerships' understatement was not inadvertent.

Petitioner computed its income tax liabilities for its 1969 and 1970 taxable years using the actual amount of the inventory transferred ($14,419.26) to it by the partnerships rather than the closing inventory figure erroneously reported by its predecessors on their final returns ($7,679.54). On audit, respondent determined that petitioner must use the lower figure as its opening inventory, and petitioner here contends that determination was erroneous.

Section 362(a)(1)[4] provides that, in the case of a transaction to which section 351 applies, the transferee corporation's basis of the transferred property shall be the same as it would be in the hands of the transferor. Respondent urges that, since the transferor partnerships' closing inventories in this case were shown on their final returns as $7,679.54, that figure, albeit erroneous, must be used by petitioner as its opening inventory. Respondent argues that petitioner should not be allowed to use its actual opening inventory figure because, if it does, the $6,739.72 will be recovered twice (i.e., the partnerships will have understated their closing inventories by that amount, thereby reducing their taxable income, and petitioner will have reduced its taxable income by including such amount in its opening inventory).

We hold for petitioner.

Significantly, section 362(a)(1) refers to the transferor's "basis" in the transferred assets.[5] In providing for the carryover of the transferor's basis in a section 351 transaction, section 362(a) does not state that the transferee corporation's basis shall be some figure used in the transferor's final return or in computing the transferor's taxable income for a stated period. Rather, the section refers to a carryover basis "the same as it would be in the hands of the transferor." Accordingly, the issue, in substance, is what was the basis of the inventory in the hands of the partnerships. The answer depends upon whether the understatement of the closing inventory in the partnerships' returns should have been corrected for the year in which it was made or may

---

[4] SEC. 362. BASIS TO CORPORATIONS.

(a) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If property was acquired on or after June 22, 1954, by a corporation—

(1) in connection with a transaction to which section 351 (relating to transfer of property to corporation controlled by transferor) applies, * * *

\* \* \* \* \* \* \*

then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain recognized to the transferor on such transfer.

[5] See Rev. Rul. 70–239, 1970–1 C.B. 74, in which the Commissioner ruled that the partnership itself is, in substance, the transferor in a sec. 351 transaction regardless of whether it is the actual transferor, or it terminates and the partners transfer the distributed assets, or the partners transfer their interests to the corporation in exchange for the stock. Cf. *Miller Bros. Electric, Inc.*, 49 T.C. 446 (1968).

be carried forward and perpetuated as a compensatory adjustment to the opening inventory of petitioner for the succeeding year in which petitioner held the assets.

Ordinarily, of course, a taxpayer's opening inventory is the same as his closing inventory for the immediately preceding year. However, where a taxpayer has made a mistake in computing closing inventory for the prior year, his basis is not adjusted for the mistake. Corrections should be made for the year of the mistake, and the proper opening inventory should be used for the succeeding year.[6] The correctness of this principle was assumed in *Commissioner* v. *Gooch Co.*, 320 U.S. 418 (1943), even though the adjustment of the closing inventory for the prior year resulted in a barred overpayment for that year. Further, section 1013, dealing specifically with the basis of property included in inventory, provides that if property *should have been included* in closing inventory for the prior year, its basis shall be the "last inventory value thereof." [7]

We think respondent errs in arguing that the predecessor partnerships' omission from closing inventory of the gas and diesel fuel stored underground has the effect of reducing the basis for the inventory on hand at the time of the transfer to petitioner. This omission did not reflect a consistent application of the predecessors' method of accounting.[8] Rather, it was the result of an inadvertent error in the use of their established accounting method. The error must be corrected through an adjustment for the year in which it was made rather than through an income-distorting or compensatory adjustment in petitioner's first taxable year. See *Wood-Mosaic Co.* v. *United States*, 160 F. Supp. 636, 641 (W.D. Ky. 1958), affirmed per curiam 272 F. 2d 944 (C. A. 6, 1959), certiorari denied 363 U.S. 803 (1960) ; *Lundborg & Co.* v. *White*, 3 F. Supp. 610 (D. Mass. 1933).

---

[6] In *Charlie L. Page,* T.C. Memo. 1956–61, the taxpayer had shown a closing inventory of $6,850 on his 1947 return and an opening inventory of $28,077.80 on his 1948 return. The 1948 opening inventory, based on the farm price method, was found to be properly computed, and the Court said :

"A taxpayer should use the same figure for his closing inventory for one year and his opening inventory for the next where he continues to use the same method. However, if the closing figure was in error, it should be corrected rather than to require the taxpayer to open with an incorrect figure."

[7] Sec. 1013 is as follows :

SEC. 1013. BASIS OF PROPERTY INCLUDED IN INVENTORY.

If the property should have been included in the last inventory, the basis shall be the last inventory value thereof.

Since the omitted gas and diesel fuel in the ground *should have been included* in the last inventory of the partnerships, this language indicates that the basis of petitioner's inventory should include the inventory value of such omitted items.

[8] The term "method of accounting" includes "the *consistent* treatment of a recurring, material item, whether that treatment be correct or incorrect." (Emphasis supplied.) *H. F. Campbell Co.*, 53 T.C. 439, 447 (1969), affd. 443 F. 2d 965 (C.A. 6, 1971) ; *Fruehauf Trailer Co.*, 42 T.C. 83, 103 (1964), affd. 356 F. 2d 975 (C.A. 6, 1966), certiorari denied 385 U.S. 822 (1966).

In cases involving other types of property, the courts have held that a taxpayer's basis in property is not reduced or eliminated by erroneous deductions in an earlier year.[9] In *Kenosha Auto Transport Corporation*, 28 T.C. 421, 424–425 (1957), the taxpayer was allowed a deduction for cargo loss and damage in 1948 even though part of its basis was improperly deducted in prior years as anticipated losses. The Court said (28 T. C. at 425) that this conclusion was "reasonable and necessary if we are to recognize the principle of the annual accounting period and the purpose of statutes of limitations."

In *Crosley Corporation* v. *United States*, 229 F. 2d 376 (C.A. 6, 1956), the taxpayer deducted in 1939 the costs of tooling for the production of radios and refrigerators. Subsequently, the taxpayer claimed that such costs should have been capitalized and deducted in part in 1940 and 1941. Sustaining the taxpayer's claim, the court said (229 F. 2d at 379) :

Any such item incorrectly reported as a matter of law can later, subject to applicable statutes of limitation, be corrected by the Commissioner or the taxpayer. * * * Such corrections can be made in later years, notwithstanding the fact that offsetting corrections in earlier returns may be barred by the Statute of Limitations.

See also *United States* v. *Albertson Co.*, 219 F. 2d 920, 923 (C.A. 9, 1955) ; cf. *Manhattan Building Co.*, 27 T.C. 1032, 1043 (1957).

Respondent's "double-deduction" argument was recently answered by this Court in *B. C. Cook & Sons, Inc.*, 59 T.C. 516 (1972), where, as in the instant case, the deduction in the prior year was erroneous. In that case, one of the taxpayer's employees had embezzled funds and had so manipulated inventory purchases as to give the taxpayer current deductions for the amounts embezzled. Upon discovery of the embezzlements, the taxpayer claimed a loss deduction. The Court pointed out that the prohibition against double deductions evolved in the context of cases where the taxpayer *correctly* treated an item in an earlier barred year, receiving a tax benefit therefrom, and then sought to obtain a similar tax benefit in a later year. Allowing the deduction, the Court added (59 T.C. at 521) :

If we were to apply the doctrine prohibiting double deductions in a situation such as this, where the petitioner's action in earlier years was *erroneous*, we would turn that doctrine into a sword to pierce the shield of repose provided by

---

[9] These cases are sharply distinguishable from those cases involving deductions in the nature of depreciation, depletion, or amortization, falling within the statutory mandate that adjustments to basis are to be made for amounts allowed but not less than the amount allowable. See, e.g., *Carloate Industries, Inc.* v. *United States*, 354 F. 2d 814, 817 (C.A. 5, 1966) (depreciation) ; *United States* v. *Koshland*, 208 F. 2d 636, 640 (C.A. 9, 1953) (depreciation) ; *Kaufman's Inc.*, 28 T.C. 1179, 1188 (1957) (depreciation) ; *Waldheim Realty & Investment Co.*, 25 T.C. 1216, 1219 (1956) (amortization), reversed on another issue 245 F. 2d 823 (C.A. 8, 1957). Also distinguishable are cases involving estoppel. See *Mayfair Minerals, Inc.*, 56 T.C. 82 (1971), affirmed per curiam 456 F. 2d 622 (C.A. 5, 1972), and cases cited therein.

the statute of limitations, and there would appear to be little need for the mitigation provisions applicable to double deductions contained in sections 1311–1315, and particularly section 1312(2). Cf. *Adolph B. Canelo III*, 53 T.C. 217, 226–227 (1969), affirmed per curiam 447 F. 2d 484 (C.A. 9, 1971). Moreover, a deduction which is *incorrectly* taken in one year should be corrected by eliminating it from the year in which it was taken. *Lucas v. American Code Co.*, 280 U.S. 445 (1930) ; *Brown v. Helvering*, 291 U.S. 193 (1934). It should not be used as an offset in another year because that would take it out of the proper accounting period. See *Commissioner v. Mnookin's Estate*, 184 F. 2d 89, 92 (C.A. 8, 1950), affirming 12 T.C. 744 (1949).

Thus, an ongoing entity's basis in inventory should be adjusted to correct for erroneous deductions in the year in which the error was made. While the error here in question was committed by a predecessor entity, nothing in the language or purposes of section 351 supports a rule requiring an adjustment of the transferee's inventory account to compensate for an error committed by the transferor. Moreover, the language of section 362(a) contains no provision authorizing adjustments in petitioner's tax liabilities to compensate for errors in the returns of its predecessors. Petitioner is a new entity, separate and distinct from the partnerships. Indeed, section 351 permits a change of ownership to the extent of 20 percent of the stock. "Petitioner has no option in determining the value of its initial opening inventory * * *. That value is fixed by section * * * [362(a)] which requires that it employ the transferor's basis," regardless of whether curative adjustments for prior years are barred. *Textile Apron Co.*, 21 T.C. 147, 153 (1953).

Respondent's reliance upon *Ezo Products Co.*, 37 T.C. 385 (1961), appeal dismissed (C.A. 3, 1962) ; *Hempt Bros., Inc. v. United States*, 490 F. 2d 1172 (C.A. 3, 1974), affirming 354 F. Supp. 1172 (M.D. Pa. 1973), and other similar pronouncements, is misplaced.[10] Each of these cases involves a taxpayer-corporation, using inventories to compute cost of goods sold, which had received its assets in a tax-free transfer. The taxpayer's predecessor had employed the cash method of account-

---

[10] These other pronouncements include *Connolly Tool & Engineering Co.*, T.C. Memo. 1964–202, and Rev. Rul. 69–117, 1969–1 C.B. 103. In *Connolly*, which respondent relies upon as presenting the "identical situation," the taxpayer was a transferee of inventory assets in a sec. 351 exchange. Its predecessor had used the cash method of accounting, subtracting the full cost of its physical inventories in computing its deduction for cost of goods sold. Respondent determined the deficiency by use of the inventory method, and the Court rejected the taxpayer-transferee's claim that the cost of the inventory on hand at the time of the transfer was part of the cost of goods sold during the taxable year in controversy, stating :

"Since petitioner's predecessor currently included the cost of the physical inventories in question in its deduction for cost of goods sold, its basis in these assets at the time of their transfer to petitioner was zero. Thus, petitioner's basis in these assets was zero, and its gain realized on the taxable sale of these assets is measured by that basis."

Rev. Rul. 69–117, *supra,* also involved a transferee corporation using an accrual method of accounting with inventories whereas its transferor proprietorship used the cash receipts and disbursements method.

ing, deducting the cost of its inventory at the time of its purchase, and consequently had a zero basis therein. Although the predecessor's accounting method may have been erroneous in each case, the courts "held that the basis of initial opening inventory in the hands of the transferee corporation should not be adjusted in order to correct for an erroneous method of accounting for that inventory by the predecessor transferor." *Dearborn Gage Co.*, 48 T.C. 190, 198 (1967). In the instant case, the taxpayer merely made an error in the application of its regular method of accounting in that it omitted a part of its closing inventory.

We hold, therefore, that petitioner is not required to take as its opening inventory the total amount shown in the final returns of the partnerships but, rather, is entitled to take as its opening inventory the correct amount thereof.

We recognize the possibility that, as a result of our holding, the $6,739.72 may escape the income tax completely unless respondent has corrected the returns of the members of the partnerships or the statute of limitations on such corrections has been extended. However, in prior cases we have applied the statute as written without regard to audit errors by respondent or reporting errors by the taxpayer. Thus, in *Manhattan Building Co.*, 27 T.C. at 1042–1043, the taxpayer's transferor had erroneously treated a transaction in an earlier year affecting real property as nontaxable under the predecessor of section 351, but the Court concluded that this section did not apply and allowed the taxpayer to prove its actual basis for the purpose of calculating its gain on the sale of the property in the year before the Court. With respect to the tax liability for the prior years, the Court quoted as follows from *Commissioner* v. *Dwyer*, 203 F. 2d 522, 524–525 (C.A. 2, 1953), affirming a Memorandum Opinion of this Court :

it is established by the great weight of authority that, if a taxpayer has not misrepresented or suppressed the facts, the statute of limitations not only prevents any reassessment of the tax after the prescribed period has passed ; *but that the Treasury may not assess a tax for a later year to make up for a credit erroneously allowed, or a charge erroneously omitted, in an earlier year.* [Emphasis added.]

Consistently, in *Gooding Amusement Co.*, 23 T.C. 408, 422–424 (1954), affd. 236 F. 2d 159 (C.A. 6, 1956), certiorari denied 352 U.S. 1031 (1957), where the shoe was on the other foot, the taxpayers had erroneously reported a gain on their partnership's transfer of assets to a corporation, but this Court found that the transaction fell within the predecessor of section 351 and sustained the Commissioner's basis determination under a provision corresponding with section 362 (a) (1). The Court remarked (23 T.C. at 423–424) :

The fact that gain was erroneously recognized to the extent that the fair market value [11] of the assets exceeded their depreciated cost and a capital gains

tax paid thereon by petitioners and their daughter, and the consideration of petitioners' redress in the premises are matters beyond the scope of this opinion. [Fn. omitted.]

We conclude that petitioner is entitled to use the correct amount as its opening inventory for its taxable year ending June 30, 1969. To give effect to other adjustments to which the parties have agreed,

*Decision will be entered under Rule 155.*