RODNEY A. AND DOROTHY M. BURAS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Buras v. Commissioner
Docket No. 1118-76
United States Tax Court
T.C. Memo 1977-325; 1977 Tax Ct. Memo LEXIS 118; 36 T.C.M. (CCH) 1311; T.C.M. (RIA) 770325; September 21, 1977, Filed *118 Held, petitioner, an insurance agent, has failed to establish his treatment in 1966 of premiums belonging to his underwriter which he wrongfully retained; the necessary elements to sustain an office-in-home deduction; that he furnished more than one-half of6his mother-in-law's support; and that his mother-in-law was a "qualifying individual" under sec. 214(b)(1). Accordingly petitioner is not allowed a deduction upon repayment, in a later year, of misappropriated funds, is not entitled to a deduction for an office-in-home in excess of the amount allowed by respondent, cannot claim his mother-in-law as a dependent under sec. 151, and is not entitled to dependent care deductions. Held further, repayments of bank loans, the proceeds of which were used to pay business operating expenses, are not deductible events. Held further, petitioner erred in taking depreciation deductions in 1972 for office furniture that he gave away in 1971. Rodney A. Buras, pro se. William A. Neilson, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years 1972 and 1973 in the amounts *119 of $2,229.81 and $919.95, respectively. Due to concessions by the parties, [1] *120 the issues remaining for decision are as follows: (1) Whether petitioners are entitled to deductions for amounts paid to Connecticut Fire Insurance Company in 1972 and 1973 of $1,816.41 and $1,497, respectively. (2) Whether petitioners are entitled to deductions for monies paid, in 1972, to National Bank of Commerce and Merchants Trust and Savings in the amounts of $4,473.30 and $128, respectively. (3) Whether petitioners are entitled, in 1972, to a deduction for depreciation in the amount of $2,097.75. (4) Whether petitioners are entitled to an office-in-home deduction in the amounts of $600 for 1972 and $350 for 1973. (5) Whether petitioners are entitled to claim Mrs. Buras' mother as a dependent, under section 151, [2] on their 1972 and 1973 returns. (6) Whether petitioners are entitled to deduct $455 for 1972 and $240 for 1973 as employment related expenses, under section 214, for the care of Mrs. Buras' mother. FINDINGS OF FACT Some of the facts have been stipulated and are *121 so found. The stipulation of facts together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Rodney A. and Dorothy M. Buras, husband and wife, resided in New Orleans, Louisiana at the time the petition herein was filed. They filed joint Federal income tax returns for the taxable years 1972 and 1973. [3] On March 2, 1976 they submitted amended joint Federal income tax returns for the calendar years 1972 and 1973 to the internal revenue service center, Austin, Texas. Petitioner, Rodney A. Buras (hereinafter petitioner) at all times pertinent hereto held an "Agency Insurance License" from the State of Louisiana. The license permitted petitioner to write insurance policies in Louisiana, but only if at the time the policy was written he had an insurance company that would accept such policy. During the years 1965 through 1968 petitioner owned and operated as a sole proprietorship, the Rodney Buras Insurance Agency. From 1965 through 1968 he wrote policies for various clients using, mainly, Connecticut Fire Insurance Company (Conn. Fire) as his underwriter. It was his *122 practice to collect the total premiums due on the policies he issued, remit a specific portion of the premiums to Conn. Fire, and retain the remainder as his commission. Conn. Fire issued monthly statements to petitioner that noted, among other things, total premiums petitioner should have collected from his clients, the portion of premiums owed to Conn. Fire and petitioner's commissions. However petitioner, in 1966, remitted to Conn. Fire less than the proper amount of premiums that he was required to tender. He also took credit for certain return premiums on policies cancelled by Conn. Fire which he failed to refund to his clients and which Conn. Fire had to pay to his clients. Petitioner used all money wrongfully retained to pay various business debts and expenses and properly deducted amounts paid, in the year of payment, on his returns. Conn. Fire and petitioner agreed that the total amount due Conn. Fire because of the above was $9,831.70. During 1968 through 1970 petitioner paid Conn. Fire $5,950 attributable to this liability. On January 7, 1972 petitioner and Conn. Fire entered into a consent judgment wherein it was agreed that petitioner's remaining liability to Conn. *123 Fire was $3,881.70. In 1972 Conn. Fire garnished petitioner's wages from the City of New Orleans and the State of Louisiana in the amount of $1,816.41; in 1973 Conn. Fire garnished petitioner's wages in the amount of $1,497. Petitioner on his original and amended 1972 returns deducted, as an ordinary and necessary business expense, this $1,816.41 and on his original and amended 1973 returns similarly deducted the $1,497 granished by Conn. Fire. In his notice of deficiency, dated January 28, 1976, respondent disallowed these deductions explaining that "it has not been established that any amount constitutes an ordinary and necessary business expense or was expended for the purposes designated." In order to reopen his insurance agency, that had been closed since early 1968, petitioner, in December 1969, borrowed $10,000 from the National Bank of Commerce (National Bank). In October of 1970 petitioner renewed this loan for an additional $5,000 (he had previously reduced the loan balance to $5,000) because of certain financial setbacks encountered in his insurance business. He used these loan proceeds to pay accumulated operating debts and expenses of his insurance agency and to finance *124 his business. Such debts and expenses were properly deducted on petitioner's income tax returns for the years 1969 and 1970. Petitioner in 1972 paid, on the aforenoted loans, National Bank $4,473.30 and deducted this amount as an ordinary and necessary business expense on his original and amended 1972 returns. Although petitioner reopened his insurance office in December 1969, he could not write insurance policies since he had no company that would accept his policies. Therefore he brokered business to other agents in order to have his policies accepted by an insurance company. In April 1971 petitioner closed his office and gave away all his office furniture. On his 1972 amended return petitioner claimed a deduction for depreciation of $2,097.75 since he did not take depreciation on the office furniture on his 1970 and 1971 returns. In 1972 and 1973 petitioner attempted to operate his insurance business on a part-time basis out of his eight room, two bath home. He kept his files and records in one bedroom and did his work at the dinnette table in the kitchenette. On his original 1972 return petitioner deducted $509.85 as house repairs. However on his 1972 amended return petitioner *125 dropped this claim and instead alleged a deduction for $600 as "rent" for operating his insurance business out of his home. Petitioner deducted $600 for office rent and expenses on his 1973 original return.He now claims on the amended return only a $350 deduction for office rent for the insurance business. Respondent has allowed an office-in-home deduction of $114.35 for 1973. Josephine Landry, petitioner's mother-in-law, resided with petitioners from July 1950 to January 1974. During 1972 and 1973 Mrs. Landry received a pension from the Veterans Administration in the amount of $1,018.81 and social security of $998.40 per year. She did not contribute toward the rent, utilities, groceries or other expenses of the Buras' household. For 1972 and 1973 (as well as in prior years) petitioners claimed Josephine Landry as a dependent under section 151(e).Respondent disallowed such dependency exemptions in his notice of deficiency since petitioners could not establish that they furnished more than one half of Mrs. Landry's support for each of the taxable years at issue. Furthermore, Mrs. Buras is gainfully employed and, as Mrs. Landry has several chronic illnesses and is unable to help *126 around the house, petitioners employed a woman to come to their home, one day a week, to clean Mrs. Landry's room and to do "odd jobs" around the house. Petitioners, pursuant to section 214, deducted on their original and amended 1972 returns $455 for such domestic services. They claimed no deduction for dependent care on their original 1973 return, but did take a $240 deduction for dependent care on their 1973 amended return. OPINION 1. Amounts garnished by Conn. Fire
The parties have stipulated the facts that resulted in garnishment by Conn. Fire of petitioner's wages in 1972 and 1973. Simply stated, petitioner failed to remit in 1966 to Conn. Fire a portion of its proper share of insurance premiums. Petitioner used such funds to keep his insurance agency afloat and properly deducted all expenses of his business, that were paid, in 1966 through 1968. Petitioner contends that he should be entitled to a deduction by reason of the garnishment in 1972 and 1973 since he "incorrectly" [4] *127 reported as income on his 1966 return all gross premiums he received from his clients instead of the lesser commission income.
Initially we note that respondent informed petitioner and this Court that all 1966 returns located in the internal revenue service center had been destroyed. Therefore respondent was unable to produce petitioner's 1966 return at trial. Additionally petitioner at trial admitted he did not have a copy of his 1966 return and attempted to substantiate his aforenoted contention testifying, in pertinent part, that he "was under the impression" that he reported as income on his 1966 return gross premiums received instead of commission income.We note, however, that the parties have stipulated that petitioner "reported a zero income tax liability" for that year.
Petitioner, of course, has the burden to prove that the respondent erred when he stated in his statutory notice that he (petitioner) had not established the business nature of the payments. Rule 142, Tax Court Rules of Practice and Procedure. His payments to Conn. Fire in 1972 and 1973 are not free-standing deductible items. Their deductibility depends upon their origin, the *128 cause or necessity for the payments. Absent proof that petitioner had included the full premiums in income, he cannot demonstrate that he has incurred a business expense or loss by reason of the payments. Annual accounting system or not, the nature of the item at issue can only be determined by a reference to its genesis. See Arrowsmith v. Commissioner, 344 U.S. 6 (1952). Unfortunately for petitioner he cannot establish, to our satisfaction, the requisite inclusion in income. Without such inclusion petitioner has no basis with which to take a loss. Section 165(b), (c)(2). Cf. Las Cruces Oil Co. v. Commissioner, 62 T.C. 764 (1974). Petitioner, as an experienced insurance agent, was well aware of the fact that he was not entitled to retain the entire premiums paid to him by clients but rather was required to remit a prescribed portion of said premiums to the insurance company. However, by reason of a personal cash shortage, petitioner elected to retain and use the full premiums for his own purposes. By so doing he knowingly kept money which did not belong to him. We believe that it stretches human credulity to find that petitioner included such improperly retained funds in *129 his taxable income. Further, to have done so would have reduced the very benefit he was seeking, possession of additional cash. Thus we are unable to find, based upon the above, that petitioner did, in fact, report on his 1966 return any amount of insurance business income, be it gross premium or commission income. This Court has long held the view that a taxpayer is not entitled to a deduction for the repayment of an item which had not been included in income. In Rains v. Commissioner, 38 B.T.A. 1189, 1196 (1938), it was phrased * * * predicated upon the general principle that a taxpayer can not take as a deduction the loss of a gain which has not been reflected in income. We stated the same rule of law in O'Meara v. Commissioner, 8 T.C. 622, 633 (1947) in the following words: * * * A taxpayer may not take a loss in connection with an income item unless it has been previously taken up as income in the appropriate tax return. A short form for stating the rule might thus be the process of establishing a basis for an income item consists, in effect, of reporting it in the taxpayer's gross income for tax purposes. [Citations omitted.] Our holdings are supported by a subsequent *130 decision of the Supreme Court in United States v. Skelly Oil Company, 394 U.S. 678, 685 (1969), wherein it stated: We cannot believe that Congress intended to give taxpayers a deduction for refunding money that was not taxed when received. Cf. O'Meara v. Commissioner, 8 T.C. 622, 634-635 (1947). Accordingly, Arrowsmith teaches that the full amount of the repayment cannot, in the circumstances of this case, be allowed as a deduction. The above cases are in total accord with the theory of section 1341 which requires an inclusion in income before a taxpayer can avail himself of the relief provisions of that section relative to the tax computation itself.
Although the general rule is that each taxable period is to be treated as separate and independent and there can be no setoff of items of income and deductions for one year against another, Burnet v. Sanford & Brooks Co.,282 U.S. 359 (1931), "* * * a taxpayer has a duty of consistency in making its returns where the tax consequences of * * * one year are projected into a subsequent one." Mayfair Minerals Inc. v. Commissioner, 56 T.C. 82, 89 (1971), affd. per curiam 456 F. 2d 622 (5th Cir. 1972). This duty of consistency arises "* *131 * * from the duty of disclosure which the law puts on the taxpayer, along with the duty of handling his accounting so it will fairly subject his income to taxation." Wichita Coca Cola Bottling Co. v. United States, 152 F. 2d 6, 8 (5th Cir. 1945). From a practical point of view, an act of omission is more misleading to respondent than an act of commission. Further, were we to permit a taxpayer, who has appropriated, without consent, to his own use funds belonging to another, a deduction for any eventual repayment without regard to whether said funds were included in income in the year of appropriation, we would be creating a situation where the miscreant has nothing to lose, tax-wise, from failing to report said sums. At the worst he breaks even where the statute of limitations has not run on the year of appropriation and, at best, he gains tax-wise by securing a deduction without any corollary income. Thus, we hold that the petitioner has not met his burden of proving his entitlement to the deduction at issue. Implicit in our holding is the rejection of the ground urged by respondent for disallowing the deduction; namely that the payments merely reflected repayments on a loan. *132 It takes two to tango and two to make a loan unless we invoke some sort of constructive loan theory. We see no basis for such an invocation here. 2. Payments to National Bank of Commerce and Merchants Trust & Savings
We have previously found petitioner's payments to National Bank to be in repayment of his bank loan.The proceeds of such loan were used to pay operating debts of petitioner's insurance agency; such amounts were properly deducted, as business expenses, in the (years) paid. To grant petitioner an additional deduction upon repayment of his bank loan would be to allow a double deduction. There is no basis for a deduction upon repayment of the loan. Inasmuch as petitioner offered no evidence concerning the amount paid to Merchants Trust & Savings we uphold respondent's disallowance. Rule 142(a), Tax Court Rules of Practice and Procedure.
3. Depreciation
Petitioner erred in taking depreciation deductions in 1972 for office furniture that he gave away in 1971. The fact that he failed to take depreciation deductions on such furniture in 1970 and 1971 is irrelevant. Section 1.167(a)-10, Income Tax Regs.
4. Office-in-home deductions
Petitioner testified that he calculated *133 the office-in-home deductions by speculating that he could not lease an office for less than $50 per month. Therefore he charged himself, but did not pay, $600 for 1972 (12 months at $50) and $350 for 1973 (7 months at $50). Based solely upon petitioner's testimony, we have previously found that he attempted to operate his insurance business, on a part-time basis, out of his home. Although such business produced no gross receipts for 1972 and 1973, we believe his activities constituted the carrying on of a trade or business, and expenses incurred in pursuit thereof are deductible under section 162. However, once again, petitioner has failed to establish the necessary elements to sustain such deduction, to wit: (1) the total area of his home, (2) the portion of the home used for business, (3) the amount of time spent on business matters in the home, (4) the total time such business space was actually used for all purposes, (5) the total expenses incurred in operating the home, and (6) the portion of expenses attributable to the business office. See Gino v. Commissioner,60 T.C. 304 (1973), revd. 538 F. 2d 833 (9th Cir. 1976), cert. denied 97 S. Ct. 490 (Nov. 29, 1976). Hence *134 no deduction, in excess of the amount allowed by respondent, is allowable because we have no evidence in the record to make a determination or even an estimate of an allowable deduction. 5. & 6. Dependency exemptions and dependent care deductions
Section 152 defines the term "dependent" to mean certain individuals "* * * over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer * * *." Mrs. Buras' mother, Josephine Landry, is one of the class of individuals specified under section 152, but petitioner has the burden of proof to show that he supplied over half of her support during 1972 and 1973. "* * * The term 'support' includes food, shelter, clothing, medical and dental care, education and the like. * * *" Section 1.152-1(a)(2)(i), Income Tax Regs. We have previously found that Mrs. Landry did not contribute money towards the rent, utilities, or groceries of the Buras' household while she lived with petitioners. Additionally, the parties have stipulated that during 1972 and 1973 Mrs. Landry received annual pensions from the Veterans Administration and the Social Security Administration in the total amount *135 of $2,017.21. The record is inconclusive to establish whether Mrs. Landry used these pensions, or any part thereof, for her support. We note that petitioner did not call, as a witness, Mrs. Landry because of her bad health and the possibility that she would be a hostile witness. Moreover, we have found that Mrs. Landry had several chronic illnesses and required medical attention and care.No testimony was adduced at trial to establish the payor of her medical expenses. Although we believe, in a case such as this, that the total amount of support need not always be precisely proved, petitioner has not made a diligent effort to present this Court with sufficient evidence to find that he furnished over one half of Mrs. Landry's support for the years at issue. See and compare Pillis v. Commissioner,47 T.C. 707 (1967) and Cobb v. Commissioner,28 T.C. 595 (1957). Similarly petitioner has not presented sufficient evidence necessary to establish his claim for dependent care deductions, in 1972 and 1973, for Mrs. Landry under section 214(a) and (b). [5] *136 Notwithstanding the other requisite elements under section 214, petitioner has failed to reach first base in that he has not shown, under section 214(b)(1), that Mrs. Landry, an alleged "qualifying individual," was "* * * physically or mentally incapable of caring for [herself]. * * *" See section 1.214A-1(b)(1) and 1(b)(3), Income Tax Regs. It follows that if Mrs. Landry was not a "qualified individual" the deduction must be denied. In view *137 of the foregoing, Decision will be entered under Rule 155. Footnotes
1. Respondent has conceded that the following items and amounts are properly deductible: (1) $520 for "gas, tires, oil and repairs" on the 1972 and 1973 returns; (2) and additional interest deduction for $10.75 paid to National American Bank, claimed on the 1972 amended return; and (3) an additional $18 of charitable contributions for 1973 as reflected on the 1973 amended return. Petitioners have conceded that the following claimed deductions are not allowable: (1) the deduction taken for "clothing-work" in 1972 in the amount of $342.38; (2) the 1972 deduction labeled "Internal Revenue Department" in the amount of $75.00; (3) the 1972 deduction of $450 labeled "Mrs. Mildred Smith (return premiums)"; (4) mathematical error of $3.26 in petitioners' favor on the 1972 return; and (5) miscellaneous deductions of $1,915.81 claimed on the 1973 return and labeled "income tax credit 1971, 1972." Also the parties agreed that: (1) the amount of taxes paid by petitioners in 1972 was $593.80; therefore, taxable income is increased, in 1972, by $94.10; and (2) the verified medical expenses for the year 1972 are $682.15, subject to the 3 percent floor, plus one half of the petitioners' hospitalization premium, $79.14. 2. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years at issue.↩
3. The record does not indicate when and where these returns were filed.↩
4. Having exercised dominion and control over the full premiums petitioner should have included said sums in his income. Automobile Club of Michigan v. Commissioner, 353 U.S. 180 (1957); James v. United States, 366 U.S. 213↩ (1961).
5. SEC. 214. EXPENSES FOR HOUSEHOLD AND DEPENDENT CARE SERVICES NECESSARY FOR GAINFUL EMPLOYMENT. (a) Allowance of deduction.--In the case of an individual who maintains a household which includes as a member one or more qualifying individuals (as defined in subsection (b)(1)), there shall be allowed as a deduction the employment-related expenses (as defined in subsection (b)(2)) paid by him during the taxable year. (b) Definitions, Etc.--For purposes of this section-- (1) Qualifying individual.--The term "qualifying individual" means-- (A) a dependent of the taxpayer who is under the age of 15 and with respect to whom the taxpayer is entitled to a deduction under section 151(e), (B) a dependent of the taxpayer who is physically or mentally incapable of caring for himself, or (C) the spouse of the taxpayer, if he is physically or mentally incapable of caring for himself.↩